[No. 6639. Decided July 26, 1907.]

## THOMAS LECHMAN, *Appellant*, v. J. L. MILLS *et al.*, *Respondents.*[1]

EASEMENTS—BY PRESCRIPTION—PAROL GRANT—LICENSE. Verbal authority to conduct and impound water for a water power, granted by the occupant of land under agreement to make a deed upon acquiring title, in consideration of the grantee's constructing and operating a sawmill on his adjoining land, is more than a revocable license, and amounts to an easement by prescription, where the grantor acquiesced in the incurring of expense and in such use of the land for twenty-five years.

SAME—PRESUMPTIONS—ADVERSE POSSESSION. The continued use of a canal for 25 years across the lands of another for a water power for extensive mills on adjoining land is presumed to be adverse, until the contrary is shown.

SAME—ORAL GRANT. An easement by prescription, used under claim of right for the statutory period, is not deprived of its adverse character by reason of the fact that it was originally granted by parol.

Appeal from a judgment of the superior court for Kittitas county, Rigg, J., entered June 25, 1906, upon findings in favor of the defendants, after a trial on the merits before

[1]Reported in 91 Pac. 11.

the court without a jury, in an action for an injunction. Affirmed.

*John B. Davidson,* for appellant.

*Carroll B. Graves* and *J. H. McDaniels,* for respondents.

HADLEY, C. J.—This action was brought to enjoin the defendants from keeping and maintaining a canal on and across certain lands which the plaintiff claims to own, and also from overflowing with water any portion of said lands by means of said canal together with dams or dikes. Following largely the order of statement found in the brief of respondents, we believe the following is a fair statement of the facts in the case: In the year 1879 one Briggs was the occupant, but not the owner, of the land over which this controversy exists, and which land the plaintiff now claims to own. At that time it was believed the land would be included within the limits of the grant to the Northern Pacific Railway Company when those limits should be determined by the adoption of the line of definite location of the road, such adoption not then having been made. Briggs expected to purchase the land from the railroad company as soon as the latter acquired the title and was in position to make a sale and conveyance. But the land was then a part of the public domain, and Briggs was a mere occupant. While such was the situation, Mr. Mills, one of the defendants in this action, constructed a water ditch and pond on part of said land to serve the purposes of power for the operation of a sawmill. The ditch led from the Yakima river down to a depression upon the land now claimed by the plaintiff, and by means of dikes and dams, together with the natural topography of the ground, the water was impounded in a lake or pond, a part of the land so flooded being a part of the land now claimed by the plaintiff. The lower end of the pond was upon land owned by Mills, and the water which flowed into the pond was released through an outlet upon the land of Mills. Mills also constructed a saw-

mill, and the water so impounded developed the power for the operation of the mill.

Prior to the construction of the ditch, reservoir, and mill, said Mills entered into an agreement with Briggs, the real nature of which is in issue. The plaintiff contends that it was a mere permission or revocable license to Mills to construct and maintain the ditch and reservoir. The defendants contend, and the trial court found, that it was a verbal grant from Briggs to Mills of the right to construct and maintain said works upon the land. It is not disputed that Briggs at that time, and as a part of the agreement, undertook and promised to execute a deed as soon as he should obtain title from the railroad company. But the plaintiff claims that Briggs, in making the agreement, did not intend to give a deed without first being paid a further consideration in money, no amount being stated but the amount to be subsequently fixed by further agreement. The defendants contend that this verbal agreement contemplated, so far as a verbal agreement could, an absolute and perpetual grant. Mills has continued to operate his sawmill by means of the water so stored from the time of said construction up to the present time. In 1882 he granted to Hutchinson and Dreisner a one-half interest in the said power for the purpose of operating a flour mill, which was then by them erected. The said flour mill, together with the said conveyed interest in the water power, has by mesne conveyances passed to the defendants Kendall and Mack. The Northern Pacific Railway Company deeded the land to Briggs in 1887, and he continued to own and occupy all of the land except that occupied by the canal and reservoir, until October, 1898. During all of said time the defendants and their predecessors in interest continued to maintain the canal and reservoir, and to impound the water therein, and to utilize the power for the operation of said mill plants. In October, 1898, Briggs executed to the Sullivan Savings Institution an instrument in the form of a deed purporting to convey to said grantee the title to said land. The plaintiff derives his

title through said Sullivan Savings Institution. This action was brought in January, 1906, to enjoin the defendants, as aforesaid, from further maintaining the ditch and reservoir. The cause was tried before the court without a jury, and judgment was rendered for the defendants, to the effect that they have a perpetual easement against the plaintiff and all persons claiming or to claim through or under him. The plaintiff has appealed.

Finding No. 2, as entered by the court, is as follows:

"That just prior to the construction of said works the said defendant Mills entered into an agreement with one Wilken Briggs, who was then the occupant of the land hereinabove described which land is claimed by the plaintiff, wherein and whereby the said Mills undertook and agreed to construct said canal, dams, reservoir and saw-mill, and the said Wilkin Briggs, in consideration of said undertaking and agreement of said J. L. Mills, gave and granted to said J. L. Mills verbally a perpetual right of way over and upon said land for said canal, ditch and reservoir, together with the right to construct and forever maintain said canal, ditch, reservoir and dams upon said land and to convey said water through said ditch or canal into said reservoir and to impound said water in said reservoir and overflow the land occupied by said reservoir in order to make the required head of water for the operation of the mills that were to be run by said power. That at that time the said Wilkin Briggs had no title to the land now claimed by the plaintiff but the same was then a part of the public domain of the United States, but it was then supposed that the same would be included within or covered by the land grant to the Northern Pacific Railroad Company as soon as the route of said company's railroad should be definitely located through said county, and the said Wilkin Briggs then expected to eventually purchase said land from said company. And at the time of said verbal agreement between the said Wilkin Briggs and the said J. L. Mills the said Briggs verbally agreed to execute and deliver to the said J. L. Mills a deed evidencing said grant of said right of way and easement upon the demand of said J. L. Mills as soon as the said Briggs himself received a deed to said land; and the said Briggs then and there waived any and all other or further

compensation on account of the construction and mainte-
nance of said works and for the overflowing of said land."

It was further found that Mills thereafter constructed said
works and sawmill and entered into the enjoyment of the ease-
ment and of the rights thus verbally granted to him, openly,
notoriously, and adversely as against Briggs and all other
persons, under claim of right, and with the full knowledge and
acquiescence of Briggs; that all of said construction was
made in reliance upon, and on the faith of, the easement so
granted and of the right to construct and perpetually main-
tain said works and conduct water through said canal and
impound the same, at an expense of $10,000, all of which
was known to Briggs who, during all the time of his oc-
cupancy acquiesced in the claim of Mills and never disputed
or denied it; that the grantees of Mills, who held the flouring-
mill power, in like manner relied upon the right to perpetu-
ally use said water and power and perpetually maintain the
reservoir, and by reason thereof they constructed their flour
mill at an expense of $8,000, all of which was known to
Briggs during the time of his occupancy and claim of title
to any of said land, and he never denied or disputed said
rights, but always acquiesced therein.     Errors are assigned
upon the findings, but we think they are sustained by the
evidence.

The findings establish that the agreement made by Briggs
with Mills was not a mere revocable license or permission to
occupy, but that it was intended to operate as a grant to be
confirmed by deed when Briggs acquired the title so that he
could convey it.   We believe it is unnecessary to discuss the
testimony in detail, since we are satisfied that it establishes
the intention to make an absolute grant, the consideration of
which was the construction and operation of the mill at that
place.   The use of the premises was thus initiated, and it con-
tinued uninterruptedly for more than twenty-five years, until
this suit was brought.   Such use must now be presumed to

have been adverse, unless it is explained to have been otherwise.

"Where the use of an easement has continued for the prescriptive period unexplained, it will be presumed to have been adverse, unless it is of such a character, or the circumstances attending it are such, as to show that it was a mere privilege enjoyed by leave of the landowner." 22 Am. & Eng. Ency. Law (2d ed.), p. 1202.

Moreover, the use was not deprived of its adverse character or rendered merely permissive for the purposes of the statute of limitations by a showing that it was preceded by an oral agreement amounting in terms to a grant, but void under the statute of limitations.

"It is generally agreed that use of an easement under claim of right by virtue of a parol grant, may be adverse so as to give a title by prescription, although the parol grant itself is void under the statute of frauds." 22 Am. & Eng. Ency. Law (2d ed.), p. 1198, and cases cited.

The following from the opinion in *Coventon v. Seufert*, 23 Ore. 548, 32 Pac. 508, may also be set forth as pertinent to this subject:

"An easement cannot be granted by parol; yet, if Mr. Simpson purchased from Mr. Jackson the right to use the ditch, and used the same for ten years, and such use was acquiesced in by Mr. Jackson and his grantees, it would be such an exercise of the easement, under a claim of right, as to give a prescriptive right to the same. It is no objection to granting an easement by prescription that the same was originally granted or bargained for by parol. That the use began by permission does not affect the prescriptive right, if it has been used and exercised for the requisite period under a claim of right on the part of Mr. Simpson and his heirs, and their grantees. If the use of a way is under a parol consent given by the owner of the servient tenement to use it as if it were legally conveyed, it is a use as of right: Gould, Waters, § 338; Washburn, Easem. 2 ed. 127. The plaintiffs have used the ditch as if it had been legally conveyed to them,—that is, they have exercised such acts of ownership over it as a man would over his own property,—and the court

must presume, in the absence of any evidence to the contrary, that the settlement was a parol consent or transfer by Mr. Jackson to Mr. Simpson of the right to use the ditch, and hence it was a use as of right."

The facts in this case clearly show a continuous adverse use by respondents and their grantors under claim of right for more than a quarter of a century. This establishes their title by prescription, and we find it unnecessary to discuss other reasons suggested in support of their title.

Appellant claims a reversal in any event, on the ground that the decree is too broad inasmuch as it quiets the title to all the land covered by water from the canal, dams, and reservoir, as the same existed at the time of the decree. It is argued that there was no attempt in the pleadings or evidence to define the boundaries or to ascertain with any degree of exactness the extent of the user by respondents. We are unable to see any merit in this contention. The decree is limited to the "reservoir, dams, and dikes, as the same are at present maintained over and upon the land of the plaintiff." There is no suggestion in the record anywhere that the area involved is not the same that it has been during all the years, and no suggestion to the contrary having been made in the court below, and the cause evidently having been tried throughout upon that theory, we find no error in the particular mentioned.

The judgment is affirmed.

CROW, MOUNT, and FULLERTON, JJ., concur.