[No. 13392. Department Two. December 26, 1916.]

## A. J. WENDLER, *as Administrator etc., Respondent*, v. EVERETT WOODARD *et al., Appellants.*[1]

EXECUTORS AND ADMINISTRATORS—ACTIONS—REAL ESTATE—RIGHT TO SUE—QUIETING TITLE. The administrator may sue to quiet title to water for irrigating the lands of the estate and for injunctive relief, notwithstanding Rem. Code, §§ 1341-1366 vest title in the heirs immediately upon the death of the ancestor; since the administrator has the right of possession.

WATERS AND WATER COURSES—IRRIGATION — LEASED LANDS — ACTIONS—LANDLORD AND TENANT. In an action to enjoin interference with water rights for irrigation, it is immaterial that the lands were under lease, since either the owner or tenant could enjoin interference with possessory rights.

SAME—IRRIGATION—PRESCRIPTIVE RIGHTS—ABANDONMENT. Whether an irrigation ditch was abandoned by changes made with permission is a question of fact and intention.

SAME — PRESCRIPTIVE RIGHTS — RIGHT OF WAY — ADVERSE USE — CLAIM OF RIGHT—PRESUMPTION. Continuous, actual and open possession of water flowing in a ditch across railroad lands, for the requisite statutory period, is presumed to be under a claim of right, so as to ripen into title to the right of way by prescription, although there may have been immaterial changes in the use of the easement.

SAME—APPROPRIATION—PUBLIC LANDS — EVIDENCE — SUFFICIENCY. That land within the public domain was vacant, unimproved and unoccupied, at the time of the appropriation of water from a stream, is some evidence that it was unappropriated government land, within 7 Fed. Stat. Ann. 1091, confirming the title to the water upon public lands actually appropriated and put to a beneficial use; and is sufficient where there was no controverting evidence or inference.

SAME—ACTIONS—DECREE—EQUITY. Where plaintiff, in his pleadings, only claimed 200 cubic inches of water per second of time, out of a flow of 1,500 cubic inches flowing in a ditch, defendant, under a denial of the right to the water and easement, brings himself within the domain of equity; and it is inequitable and error to enjoin any interference with the water in the ditch, thereby preventing the beneficial use of water not belonging to the plaintiff; but the decree should specifically establish the plaintiff's right to 200 inches and to the easement in the ditch to that extent.

[1]Reported in 161 Pac. 1043.

Appeal from a judgment of the superior court for Stevens county, Jackson, J., entered September 11, 1914, in favor of the plaintiff, in an action to quiet title to waters for irrigation, tried to the court. Modified.

*Hibschman, Dill & White* and *Albert I. Kulzer*, for appellants.

*L. C. Jesseph*, for respondent.

HOLCOMB, J.—Issue was joined in this cause by admissions and denials in the answers of the several defendants to the amended complaint of respondent alleging sufficient facts and praying that he be decreed title, to the extent of 200 cubic inches of water per second of time, to the waters flowing in a nonnavigable stream called Cottonwood creek, by right of prior appropriation thereof, and the title and right to the ditch or waterway through which he had conveyed the water from the place of diversion upon the lands now owned and occupied by some of the defendants, and over, upon, and across the lands now owned by others of the defendants to the lands now owned by the estate and heirs of respondent's intestate, and for temporary and permanent injunctive relief. After a trial of the facts by the court, decree was entered in conformity with the prayer of the amended complaint.

I. The first question to be determined is raised by appellants' demurrer to the amended complaint, which was overruled, (1) that the plaintiff has no legal capacity to sue; (2) that there is a defect of parties plaintiff; (3) that the complaint is insufficient in facts. The first two grounds are urged relying upon the statute (Rem. Code, §§ 1341-1366), vesting title to real estate and hereditaments in the heirs immediately upon the death of the ancestor.

While it is true that the heirs take title immediately, the administrator has the right of possession and the concomitant right to recover possession for the estate. *Gibson v. Slater,*

42 Wash. 347, 84 Pac. 648; *Smith v. Stiles*, 68 Wash. 345, 123 Pac. 448. This would include the right to any and all auxiliary and immediate and permanent equitable relief. The claim that, in any event, the lands of the estate of Wendler being under a lease for years, the lessee only could enjoin interference with any of his demised possessory rights, is also untenable. *Crook v. Hewitt*, 4 Wash. 749, 31 Pac. 28, does not limit the right to such remedy to the lessee only, but holds that either the owner or the tenant could enjoin such interference. Jones, Landlord & Tenant, § 644; 24 Cyc. 930. The demurrer was properly overruled.

II. It is asserted upon the facts that no relief should be granted against appellants. In order to understand the matter, a brief statement is necessary. In 1886 or 1887, one Stephen H. Champ, having previously made settlement upon the northwest quarter of section 7, township 31 north, range 41 E., W. M., in Stevens county, commenced the construction of an irrigation ditch from Cottonwood creek. On June 1, 1887, he located 200 inches of water of Cottonwood creek by posting at the point of diversion his notice of appropriation, and on June 3, 1887, he recorded his appropriation notice in the office of the county auditor. The intake and place of diversion of the water was located on the south bank of the creek in the northwest quarter of the northwest quarter of section 8, township 31 north, range 41 E., W. M., in Stevens county, and was constructed thence in a westerly and southwesterly direction over and across a portion of the forty in which the water was diverted, and across the northeast quarter of the northeast quarter and the northwest quarter of the northeast quarter of section 7, and thence to the northwest quarter of section 7, which had been settled upon and claimed by Champ. At the time of his appropriation and diversion of the water, the northwest quarter of section 8, in which the appropriation was made, was vacant, open, unsettled, and apparently unappropriated government domain. These lands were within the land grant of the United

States to the Northern Pacific Railroad Company, but the land in the odd numbered section 7 settled on by Champ—the northwest quarter—passed to him from the government and never passed to the Northern Pacific Railroad Company. The other lands in section 7 across which his irrigation ditch was built afterwards passed to the Northern Pacific Railroad Company. In 1899, Champ sold his land to another, and it was afterwards transferred to another, who, in 1901, sold and transferred it to Gustav Wendler, respondent's intestate. In 1886 or 1887, the exact date being uncertain, the ditch had been constructed and water was flowing through it from the place of intake to the Champ land. In 1895, the ditch was still in use, and the water flowing in it was used by Champ for irrigation and household purposes and for watering stock. It was so used as long as Champ lived on the place, until 1899. From the time the Wendlers occupied the place in 1901 until the fall of 1913, they used the water flowing in the irrigation ditch for the same purposes as those above mentioned, except one year, 1911, when they, with the consent of the owners of the land where situated, turned the ditch further south for sawmill purposes. The ditch as constructed by Champ and as used by the subsequent purchasers of the land was eighteen to twenty inches in width and probably six or eight inches in depth, and the exact amount of water flowing through it was never measured during the time they used it. They used it to irrigate somewhere between five and ten acres, though it was possible to irrigate about twenty acres more. During the twelve or thirteen years that Champ occupied the land for which the water was appropriated, no objection seems to have been made by any of the present defendants or their predecessors in interest to his use of the water flowing in the ditch and to his right to the waterway, and none seems to have been made as against Champ's successors to the same use and enjoyment, until about July, 1913, when appellants constructed a dam and irrigation ditch and prevented water from flowing down to the Wendler land.

Five propositions are advanced by appellants why no relief should be granted the respondent: (1) That Champ had no title to any right of way for a ditch by appropriation; (2) that the heirs of Wendler had no title to any ditch by adverse possession; (3) that the old ditch was abandoned; (4) that changes were made without permission; (5) that no rights had been proved in the water and there can be none in the ditch.

The third and fourth propositions are easily disposed of, being simply questions of fact upon which there was some conflict of evidence, the court finding in favor of respondent upon competent evidence. Whether the old ditch was abandoned is purely a question of fact and intent. *Porter v. International Bridge Co.*, 200 N. Y. 234, 93 N. E. 716, 21 Ann. Cas. 684. It is true, changes were made in the original line of the ditch, but it appears that these were made with permission. It is claimed by appellants that the permission was given conditionally and with qualification, and respondent to the contrary. It was a question of fact, however, and the court decided that question in favor of respondent. The evidence not preponderating the other way, we will not overturn it.

The first proposition, that Champ had no title to any right of way for a ditch by appropriation, was dependent upon the fact of whether or not the land over which the ditch extended was, at the time of its appropriation, vacant and unappropriated public land. The land in section 7, other than that acquired by him, was not. It had been appropriated for railroad purposes to the Northern Pacific Railroad Company, although it had not been perfected in the Northern Pacific Railroad Company by the filing of its map of definite location. It was, however, appropriated. As to that land, the claim of the respondent is that the estate of Wendler has title by adverse possession.

"The prevailing rule is that where the claimant has shown an open, visible, continuous, and unmolested use of land for

the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, so as to place upon the owner of the servient estate, in order to avoid the acquisition of an easement by prescription, the burden of rebutting this presumption by showing that the use was permissive." 9 R. C. L. 781.

See, also, *Lechman v. Mills*, 46 Wash. 624, 91 Pac. 11, 13 L. R. A. (N. S.) 990.

Immaterial changes or variations in the use of the easement do not destroy its identity. 9 R. C. L. 776.

We think that, under the facts in this case, there being nothing in the record to rebut the presumption of the continuous and uninterrupted, actual, and open possession of the waterway by Champ and his successors in interest across the lands in section 7 owned by some of the appellants, for more than the requisite statutory period, title by adverse possession was established.

As to the land in section 8, which, for all that appears to the contrary, was open and unappropriated public land, before there could be any title to the right of way across that land it was necessary to appropriate lawfully and to acquire a definite quantity of water. That right of way was acquired, if at all, by appropriation. 7 Fed. Stats. Ann. 1091 (U. S. Comp. St. 1913, § 4647). As the court below aptly observed, the evidence is very meager that the land in section 8, where the water was appropriated, was unappropriated. The only evidence there was in any way bearing on that matter was that of a witness, then the sheriff of Stevens county, who was acquainted with the land and the entire surroundings. He said that at that time there was no person living on either section 8 or on section 7; that in fact Mr. Champ had not yet got his buildings up on section 7, but was living temporarily with one Yenter on section 6 to the north, while he was improving his ditch and putting up his buildings; that there was no one in the neighborhood at that time. The fact that the land was vacant and unoc-

cupied is some evidence that it was unappropriated, in the absence of evidence to the contrary. While the burden of proof is upon the appropriator, when his title is questioned, to show that, at the time of his appropriation, the land on which the water was appropriated was vacant and unappropriated, we know, as a matter of fact, that lack of improvement and settlement upon land within the public domain is some evidence that it is unappropriated. There was no controverting evidence or inference that it was appropriated when Champ made his appropriation of the water thereon. Champ made prior paper appropriation and, as the evidence shows, followed it up diligently by making actual, beneficial use of the water prior to any other user or appropriator to the extent, as the evidence tends to show, of at least 200 cubic inches per second. He, therefore, under the Federal statute, *supra*, acquired title by appropriation to the water and to the right of way from the point of diversion through the unoccupied and unappropriated public land. This title was confirmed to him by the terms of the Federal statute above cited. This determination disposes of the first, second, and fifth propositions advanced by appellants.

A further question raised by appellants in their brief, but seemingly not raised by them in the pleadings, is that the decree of the lower court is inequitable because it does not permit the owner of the servient estate to use the easement for the ditch so long as that use does not interfere with the use by the owner of the dominant estate. The appellants contented themselves in their pleadings with denials of all the material allegations of the complaint going to afford the remedy prayed by the respondent. They denied the ownership of the water and of the ditch, and of all the other material allegations. It appears from the evidence in the case that there were about 1,500 cubic inches of water per second of time, by actual measurement, flowing across the lands of appellants in 1913, when they restored the water to the irrigation ditch and cleaned out and repaired the ditch. Re-

spondent only claims the right to approximately 200 cubic inches of water, which is about one-tenth of a cubic foot per second of time. This it seems, under their pleadings and under what seemed vague and indefinite evidence as to the precise amount of water they used continuously, is all that they can be awarded. While the pleadings of appellants were not so framed, respondent brought himself within the domain of equity to receive and to do only what equity awards. This is a case for the measuring of equities. The decree is too narrow in favor of respondent, or not sufficiently explicit. We think it inequitable to allow respondent to recover not only the easement of the waterway, but the entire amount of water flowing in the ditch, by reason of the injunction against appellants from interfering with the flow in the ditch in any way, not even to carry the remaining water to and for the use of their own land. He, or the estate represented, not only would thus perpetually have the 200 cubic inches adjudged to belong to him, but would seem to prevent the beneficial use of the remaining water, allowing its nonuse or waste, which is contrary to public policy. The decree should be explicit that the respondent is entitled to the 200 cubic inches appropriated and used and to take it from Cottonwood creek at the established point of diversion, and to the easement of the waterway as acquired by occupation and prescription from the point of diversion to the place of use on the Wendler lands, to convey the 200 cubic inches, approximately, of water per second of time, and free from interruption, obstruction, or interference therewith by appellants or any of them; that the remainder of the 1,500 cubic inches of water, approximately, whatever it may be, not otherwise appropriated, may be divided and separated at the intake or point of diversion of the respondents and taken thence by their own ditches, to and upon the lands of appellants for their beneficial use. The decree is modified accordingly for precision and certainty, and in all other respects affirmed.

MORRIS, C. J., PARKER, and MAIN, JJ., concur.