## CITY OF RATON v. POLLARD.

(Circuit Court of Appeals, Eighth Circuit. December 28, 1920.)

No. 5497.

1. **Municipal corporations ⬤648—Adverse use of street for prescriptive period shows acceptance.**

   Under statutes giving a city the usual broad powers of municipal corporations to establish, improve, and vacate streets, and imposing the duty to keep them open and in repair, and containing no restriction requiring formal acceptance of a street created by prescriptive use, the continuous and adverse use by the public for the requisite time is sufficient to show acceptance of the street.

2. **Adverse possession ⬤8 (4)—Title to railway right of way may be acquired.**

   As a general rule, title may be by adverse possession to portions of a railway company's right of way.

3. **Highways ⬤4—May be established by prescription on railway right of way.**

   As a general rule, highways may be established by prescriptive use over or along the right of way of a railway company.

4. **Municipal corporations ⬤817(1)—General public use of street where injury occurred held to raise presumption that it was adverse.**

   In an action for injuries sustained on a bridge on a road within the limits of a railway right of way, the general public use of the road as a highway for the prescriptive period, without anything to explain how it began, raised a presumption that it was adverse and under a claim of right, and cast the burden on the city to show that the right was permissive, so as to prevent the road from becoming a public street.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by J. W. Pollard, Sr., against the City of Raton. Judgment for plaintiff, and defendant brings error. Affirmed.

Judgment was recovered against the city of Raton, N. M., for personal injuries sustained by defendant in error. His claim was based upon alleged negligence of the city in failing to keep a bridge in one of its public streets and the approaches to it in proper repair. The questions in the case all relate to the existence of a public street at the place of the accident. It was within the city limits, but not upon any street that had been platted or established by any formal act of the city. The tracks of the Atchison, Topeka & Santa Fé Railway Company, hereafter called railway company, run through the city in a general course from southeast to northwest. The main part of the city lies to the west and south of the railway. North Third street is one of the principal streets of the city, and as platted extends northerly to the railway right of way; but for more than 20 years there has been a well-defined roadway crossing the tracks in continuation of this street. The right of way is of the width of 200 feet, and there are double tracks along its center. Going north on Third street, after crossing the railway tracks, the traveled roadway merges into a road which lies between the railway tracks and the northeast line of the right of way. This road runs parallel to the tracks, and keeps within the right of way for at least the distance of a city block to the southeast of its junction with the Third street crossing and for a little longer distance to the northwest. It then emerges from the right of way and continues to run northwesterly along the side of the right of way, leading to a dairy a mile distant.

The bridge where the accident occurred is about 300 feet to the northwest of the place where the crossing over the tracks at Third street joins this

road on the right of way, and the bridge and roadway are within the right of way at this point. The railway from Raton to the north and west follows a narrow valley between the mountains. It holds its right of way along this route by virtue of a deed to its predecessor from the Maxwell Land Grant Company. The railroad was constructed about 1879. Before that time there had existed a highway, known as a part of the Santa Fé trail, running from Colorado to' and beyond where Raton is now situated. This road had existed since about 1846, and its general course was not far from where the railroad was afterwards built. After the railroad was constructed, the highway fell into disuse, except the portion near where Raton is situated. Raton was platted in 1882, and incorporated as a town in 1891. It is not clear whether the road ran and the bridge was situated, prior to 1891, at the same place where they were at the time of the accident; but it is undisputed that since about 1891 their location has not been changed. A small coal mine, a rock quarry, and a dairy farm were located north and east of Raton, and for more than 20 years before the accident this road along the railroad right of way had been generally and continuously traveled, not only by those who hauled the products of these industries, but by the public generally. It was not shown that the city had constructed or repaired the bridge or the road, or that its officers had recognized it as a public street belonging to the city. It was not shown that the railway company had ever given permission to use its right of way for the purpose of this road, but that use had been well-defined and obvious for more than 20 years. After testimony showing these facts had been heard, the court left to the jury the question whether a public street existed at the scene of the accident, instructing them that the liability of the city depended upon the existence of a public highway at this place by prescription, and that the highway could not be found to exist unless it was shown that it had been traveled and used by the public as a highway, and had as a matter of right been claimed as such for 10 years continuously, uninterruptedly, adversely, and not by mere permission of the owner. The plaintiff had a verdict, and judgment was entered upon the verdict.

A. C. Voorhees, of Raton, N. M. (H. L. Bickley, of Raton, N. M., on the brief), for plaintiff in error.

. H. A. Kiker, of Raton, N. M. (Elmer E. Studley, of Long Island City, N. Y., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge (after stating the facts as above). [1] The plaintiff in error claims error because the court refused a peremptory instruction in favor of the city. It claims that the evidence was not sufficient to show a public street at this place, because it did not show that the city had ever accepted it by some affirmative act of its officers recognizing it as a street of the city. It then maintains that such an acceptance is necessary under the statutes of New Mexico. It is unnecessary to set out the statutes. They clothe the city of Raton with the usual broad powers of municipal corporations to establish, improve, or vacate streets, and impose a duty to keep the streets open and in repair. Some restrictions are imposed upon the power of the city to condemn property for streets, and other restrictions are imposed upon the creation of streets in platted additions; but no statutory restrictions are found which limit the creation of a street by prescriptive use or which require any formal acceptance of it by official action. Section 3365, Statutes of New Mexico, provides:

"No person or persons, nor their children or heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments, against any one having adverse possession of the same continuously in good faith, under color of title, but within ten years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued, and all suits, either in law or equity, for the recovery of any lands, tenements or hereditaments so held, shall be commenced within ten years next after the cause of action therefor has accrued."

Plaintiff in error does not contend that it is not the general rule, applicable in New Mexico, that a street or highway may be established by prescriptive use, where the general public under a claim of right and not by mere permission of the owner, have used some well-defined way without interruption, but contends that it must also be shown that the municipality accepted or recognized the highway by some act of its officers. Although there is some division in the cases, the better rule and the one established by the weight of authority is that the continuous and adverse use by the public for the requisite time is sufficient to show acceptance of the highway. Bassett v. Inhabitants of Harwich, 180 Mass. 585, 62 N. E. 974; Gallagher v. City of St. Paul (C. C.) 28 Fed. 305; Phelps v. City, 23 Minn. 276; Green v. Canaan, 29 Conn. 157; Jones on Easements, § 459.

[2, 3] Plaintiff in error also contends that a highway cannot be established by prescription over the right of way of the railway company because the right of way is already devoted to a public use. In support of this proposition is cited the case of City of Albuquerque v. Garcia, 17 N. M. 445, 130 Pac. 118, denying the power of condemnation to a city for street purposes of a community acequia in actual use, and the case of Northern Pacific Railway Co. v. Townsend, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044, holding that an individual could not for private purposes acquire any portion of the right of way of the Northern Pacific Railway Company. But the question here involved is not the power to acquire by condemnation against the railway company's consent, but the power to acquire by prescriptive use, which presumes the consent of the owner; neither is it determined by the decision in the Townsend Case, which interpreted the acts of Congress granting a right of way to the Northern Pacific Railway Company as prohibiting its alienation, for the right of way of the Santa Fé Railway Company is not shown to have been granted by Congress, but is shown to have been acquired by deed from the Maxwell Land Grant Company, and no restriction on alienation is shown to exist. The general and approved rule is that title may be gained by adverse possession to portions of a railway company's right of way (Illinois Central R. Co. v. Houghton, 126 Ill. 233, 18 N. E. 301, 1 L. R. A. 213, 9 Am. St. Rep. 581; Illinois Central R. Co. v. O'Connor, 154 Ill. 550, 39 N. E. 563; Illinois Cent. R. Co. v. Moore, 160 Ill. 9, 43 N. E. 364; Donahue v. Illinois Cent. R. Co.; 165 Ill. 640, 46 N. E. 714; Metropolitan Bank of Minneapolis v. Northern Fuel Co., 173 Ill. 345, 50 N. E. 1062; Pittsburgh, C., C. & St. L. Ry. Co. v. Stickley, 155 Ind. 312, 58 N. E. 192; Northern Pacific Ry. Co. v. Townsend, 84 Minn. 152, 86 N. W. 1007, 87 Am. St. Rep. 342; Wilmot v. Yazoo & M. Val. R. Co., 76 Miss.

374, 24 South. 701; Spottiswoode v. Morris & E. R. Co., 61 N. J. Law, 322, 40 Atl. 505; Texas & P. Ry. Co. v. Maynard [Tex. Civ. App.] 51 S. W. 255; Northern Pac. R. Co. v. Ely, 25 Wash. 384, 65 Pac. 555; 2 Corp. Jur. 225, 54 L. R. A. 526, 87 Am. St. Rep. 766, 780, note), and that highways may be established by prescriptive use over or along the right of way of a railway company (Gay v. Boston & A. R. Co., 141 Mass. 407, 6 N. E. 236; Hall v. Boston & M. R. R., 211 Mass. 174, 97 N. E. 914; Pittsburgh, C., C. & St. L. Ry. Co. v. Town of Crow Point, 150 Ind. 536, 50 N. E. 741; Blumenthal v. State, 21 Ind. App. 665, 51 N. E. 496; Gage v. Township of Pittsfield, 120 Mich. 436, 79 N. W. 687; Village of Peotone v. Illinois Central R. Co., 224 Ill. 101, 79 N. E. 678; Gulf, C. & S. F. Ry. Co. v. Bluitt [Tex. Civ. App.] 204 S. W. 441; Gulf, C. & S. F. Ry. Co. v. Bryant [Tex. Civ. App.] 204 S. W. 443).

[4] Plaintiff in error expresses some doubt of the sufficiency of the evidence of a general public use of the road and bridge under claim of right and not by permission of the railway company, to allow the case to be submitted to the decision of the jury. The evidence was ample and undisputed that for more than 20 years there had been general public travel over this highway by all who chose to go. It was used for purposes of business and pleasure. It had the appearance of an established and well-traveled road. The bridge was a very substantial frame structure, and had been in place all of this time. The road connected with and was the direct outlet of one of the main streets of the city. Several residences were built to front on it. No interruption of travel had occurred during this period of time. The use of the road was as general as the nature of the country adjacent to the city required and permitted. There was no evidence of any expressly asserted claim of right to travel over this highway, other than this user; nor was there any evidence that any permission to travel on this way had ever been sought of the railway company, nor that any had ever been granted or denied. The general public use of land as a highway for the prescriptive period, without anything to explain how it began, raised a presumption that it was adverse, under a claim of right, and cast the burden on the city to show that the right was permissive. Washburn on Easements & Servitudes (4th Ed.) 126, 127; Meade v. City of Topeka, 75 Kan. 61, 88 Pac. 574; Hartley v. Vermillion, 141 Cal. 339, 74 Pac. 987; White v. Chapin, 12 Allen (Mass.) 516; Barnes v. Haynes, 13 Gray (Mass.) 188, 74 Am. Dec. 629; Steffy v. Carpenter, 37 Pa. 41; Esling v. Williams, 10 Pa. 126; Polly v. McCall, 37 Ala. 20; Smith v. Ponsford, 184 Ind. 53, 110 N. E. 194; Mitchell v. Pratt, 177 Ky. 438, 197 S. W. 961; Moll v. Hagerbaumer, 98 Neb. 555, 153 N. W. 560; Wendler v. Woodward, 93 Wash. 684, 161 Pac. 1043; Muncy v. Updyke, 119 Va. 636, 89 S. E. 884; Wooldridge v. Coughlin, 46 W. Va. 345, 33 S. E. 233; 19 Corp. Jur. 959.

Upon the record, we think the evidence was sufficient for the jury to find the existence of a public street at the place of the accident, and the judgment will be affirmed.