[No. 28439.  *En Banc.*  March 27, 1942.]

NORTHWEST CITIES GAS COMPANY, *Respondent,* v.
WESTERN FUEL CO., INC., *et al., Appellants.*[1]

[1]Reported in 123 P. (2d) 771.

*Velikanje & Velikanje,* for appellants.

*Rigg, Brown & Halverson* and *Paul M. Goode,* for respondent.

STEINERT, J.—This action was instituted by plaintiff Northwest Cities Gas Company, a corporation, to enjoin defendants Western Fuel Co., Inc., a corporation, and James B. Huff, its president, from interfering with plaintiff's alleged prescriptive easement of right of way across the property of the defendant Western Fuel Co. A temporary restraining order, together with an order to show cause, was issued, and thereafter a trial was had resulting in a decree permanently enjoining defendants from interfering with plaintiff's use and enjoyment of the claimed right of way. Both defendants

have appealed, but the dispute is primarily between the two corporations. Plaintiff corporation will hereinafter be referred to as respondent or as the gas company, and the defendant corporation will be denominated as appellant or as the fuel company. Defendant James B. Huff will be referred to by name.

Respondent gas company owns a tract of land in the industrial section of the city of Yakima. Upon this property it operates a gas plant which it acquired from Pacific Power & Light Co. in 1929. The power company had previously operated the gas plant on the same premises since 1906. The deed from the power company to the gas company also included a grant of a perpetual right of way, between the land conveyed and a county road to the west, over a twenty-foot strip of ground belonging at the present time to one Goodman. That right of way, however, is not the one claimed by respondent in this action.

Appellant fuel company owns the land adjoining respondent's property on the north, and at present maintains a fuel yard upon it. This tract of land formerly belonged to one Mary A. Clerf, who on May 8, 1936, conveyed it to Charles S. Huff and Jessie C. Huff, his wife. At that time, Charles S. Huff, now deceased, was the president of the fuel company; later, his son, James B. Huff succeeded him in office. At all times herein mentioned, Mrs. Clerf appears to have been a resident of Ellensburg, which is about forty miles distant from Yakima.

On August 30, 1937, Charles S. Huff and his wife conveyed this latter tract of land to appellant. Both the deed from Mrs. Clerf to the senior Huffs and the deed from the latter to appellant specifically excepted from conveyance and warranty "rights of way for roads, ditches, and pipe lines over and across said premises."

South First avenue in Yakima approaches appellant's property from the north and meets the northerly boundary line thereof near its middle, but the street does not extend into or across the tract. Both tracts of land here involved, owned respectively by respondent and appellant, lie between the Northern Pacific Railway tracks on the east and the Union Pacific Railroad tracks on the west. It may be further noted that respondent's tract of land does not extend as far to the west as does appellant's tract.

Prior to 1915, the tract of land formerly owned by Mrs. Clerf and now belonging to appellant was used for the production and storage of ice, and for that purpose an artificial pond was maintained upon it, impounded by a semicircular dike or dam near the eastern boundary of the property. In 1915, the pond was abandoned and was permitted to dry up. From 1906 to 1920, persons going to the gas plant (then owned by Pacific Power & Light Co.) traveled south along south First avenue, crossed the Clerf land over a road running along the top of the dike at the east edge of the pond, and entered the power company's premises approximately at the northwest corner thereof. Egress from the premises was in the reverse course over the same route. In 1920, a bridge in the middle of the dike collapsed, and as a consequence this particular portion of the route through the Clerf land was abandoned. Shortly thereafter, however, agents of the Pacific Power & Light Co., without permission from Mrs. Clerf, laid a roadway across the dry bed of the pond and hauled in cinders to a depth of about four inches along a strip twelve to fifteen feet wide, in order to make a road passable for trucks. This road crossed Mrs. Clerf's property in a generally north and south direction and constituted, roughly, an extension of south First avenue. Another road was also early developed across

the southwest corner of the Clerf land, leading from the northwest corner of the power company's premises to a crossing over the Union Pacific Railroad tracks on the west.

Seven witnesses for respondent testified to continuous use of various roads through the Clerf tract from at least as early as 1920 until the time when appellant purchased and began to fence the property as hereinafter more fully described. The testimony of these witnesses shows that they have all made frequent trips over these routes, sometimes several trips a day, and that for many years respondent has annually transported about four thousand tons of coke over the several roads traversing the Clerf tract. The same witnesses testified further that the north-south route, in its present location, had been in constant use since 1920. They also testified that they had never applied to anyone for permission to cross the Clerf land and had never been forbidden to do so.

During the time prior to the acquisition of the property in question by Charles S. Huff and his wife, the land was also used by various persons as a dumping ground for rocks and dirt which had been removed from excavations in the city of Yakima. It is undisputed that, during all the time prior to 1936, this land was unfenced, uncultivated, and totally unimproved.

In 1936 or 1937, shortly after Mrs. Clerf had conveyed the land to Charles S. Huff and his wife, Mr. Huff had the property surveyed and partly leveled and fenced in order to make it usable as a fuel yard. Respondent's plant superintendent testified to a conversation with Charles S. Huff at the time the land was being surveyed, in the course of which Mr. Huff told the superintendent that the fence would close the roadway across his land to the west, but added that he was going to leave respondent a forty-foot driveway through

to the north. Pursuant to that promise, a lane *forty-eight* feet wide and fenced on both sides was left open, running approximately through the center of appellant's property and permitting continued traffic between respondent's plant and south First avenue. This lane led from the north line of respondent's tract, across appellant's property, toward south First avenue and approximated an extension of that street, though of somewhat diminished width.

From the time that the fence was completed, in 1936 or 1937, until the evening of August 23, 1940, a roadway through this lane was used by respondent's employees and customers. The roadway as actually used was from ten to twenty feet in width and so did not occupy all the space between the fences on the two sides of the lane. There is some dispute in the evidence as to whether or not the road through the lane was the same as the one previously referred to herein as leading in a north-south direction across the Clerf land. Respondent's witnesses testified that it was the same, whereas appellant's witnesses testified that the original road was some distance west of the lane. The trial court, after hearing the evidence and viewing the premises, found that the location of the roadway was substantially the same at all times from about 1920 to 1937; that, although the road was then shifted a little to the east, to bring it within the newly built fences, the change was made by appellant and was acquiesced in by respondent; and that respondent was not thereby deprived of its previously acquired prescriptive rights.

Sometime after the fencing was completed, appellant affixed a sign at the north entrance to the passageway reading "Private Way, Permission to Pass Over Revocable at Any Time." When respondent's superintendent observed this sign, he told James B. Huff that

the road could not be closed, to which the latter replied that the sign meant just exactly what it said. However, respondent's employees and customers continued to use the road as before.

In August, 1940, a fire of suspicious origin broke out in appellant's fuel yard and portions of the fences inclosing the lane were burned. Thereafter, on August 23rd, employees of appellant barricaded the north entrance to the passageway and for about twelve hours refused to allow traffic to pass through. This action was thereupon instituted by respondent to establish and protect its alleged prescriptive easement of right of way across appellant's land. The trial court enjoined appellants perpetually from interfering with respondent's use and enjoyment of a specifically described roadway *forty-eight* feet wide, thus confirming respondent's claim to an easement practically coextensive with the lane as fenced by Charles S. Huff. The action of the court was founded upon the conclusion that a prescriptive right of easement was acquired by respondent and its predecessor in title, Pacific Power & Light Co., during the period from 1920 to 1936, while Mrs. Clerf still owned the land in question, and before it had come into the ownership and possession of appellant.

The first question to be decided is whether or not, under the facts as stated, respondent has become entitled by prescription to a right of way of any width whatever over appellant's property. We preface our decision of that question with a statement of certain principles which either have been definitely established in this jurisdiction or else should, in our opinion, be adopted.

An easement of right of way across the land of another, including even the establishment of a public

highway over private property, may be acquired by prescription. *Wasmund v. Harm,* 36 Wash. 170, 78 Pac. 777; *Seattle v. Smithers,* 37 Wash. 119, 79 Pac. 615; *Van De Vanter v. Flaherty,* 37 Wash. 218, 79 Pac. 794; *Watson v. County Commissioners,* 38 Wash. 662, 80 Pac. 201; *Scheller v. Pierce County,* 55 Wash. 298, 104 Pac. 277; *Schulenbarger v. Johnstone,* 64 Wash. 202, 116 Pac. 843, 35 L. R. A. (N. S.) 941; *Brand v. Lienkaemper,* 72 Wash. 547, 130 Pac. 1147; *Hendrickson v. Sund,* 105 Wash. 406, 177 Pac. 808; *Downie v. Renton,* 167 Wash. 374, 9 P. (2d) 372, *Long v. Leonard,* 191 Wash. 284, 71 P. (2d) 1. See, also, 17 Am. Jur. 967, Easements, § 55; 28 C. J. S. 641, Easements, § 6; 4 Tiffany, Real Property (3d ed. 1939), 551, 598, §§ 1194, 1211.

■ The period required in this state to establish such a prescriptive right of way is ten years, by analogy to the provisions of Rem. Rev. Stat., § 156 [P. C. § 8161], which is the statute of limitations relative to actions for the recovery of real property. *Wasmund v. Harm, supra; Seattle v. Smithers, supra; Mason v. Yearwood,* 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158; *Berryman v. East Hoquiam Boom & Logging Co.,* 68 Wash. 657, 124 Pac. 130; *Hendrickson v. Sund, supra; Hughes v. Boyer,* 5 Wn. (2d) 81, 104 P. (2d) 760. See, also, 17 Am. Jur. 968, Easements, § 55; 28 C. J. S. 659, Easements, § 16.

■ Prescriptive rights, however, are not favored in the law, since they necessarily work corresponding losses or forfeitures of the rights of other persons. *Downie v. Renton,* 162 Wash. 181, 298 Pac. 454 (reversed, on other grounds, on rehearing, 167 Wash. 374, 9 P. (2d) 372); *Downie v. Renton,* 167 Wash. 374, 9 P. (2d) 372 (reversing the preceding case, on other grounds); *Long v. Leonard, supra;* 2 Kinney, Irrigation

and Water Rights (2d ed. 1912), 1876, § 1048; 28 C. J. S. 645, Easements, § 10.

When one enters into the possession of another's property there is a presumption that he does so with the true owner's permission and in subordination to the latter's title. *Long v. Leonard, supra.* Accord, *Peoples Savings Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068.

A user which is permissive in its inception cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner of the servient estate. *Scheller v. Pierce County, supra; Schulenbarger v. Johnstone, supra; Buckley v. Dunkin,* 131 Wash. 422, 230 Pac. 429. Accord, *Long v. Leonard, supra; Leinweber v. Gallaugher,* 2 Wn. (2d) 388, 98 P. (2d) 311.

It is therefore essential that all of the elements necessary to constitute a permanent valid claim by adverse user amounting to a prescriptive right be shown to be present. See the cases and texts cited in the last three preceding numerical subdivisions.

The question of adverse user is a question of fact. While there are no easement cases in this state expressly announcing this rule, we have a number of cases which do apply it in reference to adverse possession, and the rule would seem equally applicable to the issue of adverse user in easement cases. See *McAuliff v. Parker,* 10 Wash. 141, 38 Pac. 744; *Peoples Savings Bank v. Bufford, supra; Murray v. Bousquet,* 154 Wash. 42, 280 Pac. 935.

The burden of proving a prescriptive right rests upon the one who is to be benefited by the establishment of such right. *St. Martin v. Skamania Boom Co.,* 79 Wash. 393, 140 Pac. 355; *Downie v. Renton,* on rehearing, *supra; Long v. Leonard, supra; Rogers v.*

*Cation,* 9 Wn. (2d) 369, 115 P. (2d) 702. Accord, *Skansi v. Novak,* 84 Wash. 39, 146 Pac. 160; *Peoples Savings Bank v. Bufford, supra.*

■ To establish a prescriptive right of way over the land of another person, the claimant of such right must prove that his use of the other's land has been open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner of the land sought to be subjected, and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights. *Wasmund v. Harm, supra; Scheller v. Pierce County, supra; Schulenbarger v. Johnstone, supra; Brand v. Lienkaemper, supra; Buckley v. Dunkin, supra; Long v. Leonard, supra; Hughes v. Boyer, supra.* Accord, *Downie v. Renton,* 162 Wash. 181, 298 Pac. 454; *Downie v. Renton,* 167 Wash. 374, 9 P. (2d) 372. See, also, 17 Am. Jur. 971, Easements, § 59; 28 C. J. S. 645, Easements, § 10.

■ However, proof that the use by one of another's land has been open, notorious, continuous, uninterrupted, and for the required time, creates a *presumption* that the use was *adverse,* unless otherwise explained, and, in that situation, in order to prevent another's acquisition of an easement by prescription, the burden is upon the owner of the servient estate to rebut the presumption by showing that the use was permissive. *Wendler v. Woodard,* 93 Wash. 684, 161 Pac. 1043; 2 Thompson, Real Property (Perm. ed. 1939) 95, § 512; 4 Tiffany, Real Property (3d ed. 1939) 563, § 1196a; 17 Am. Jur. 981, Easements, § 72; 28 C. J. S. 736, Easements, § 68. Accord, *Lechman v. Mills,* 46 Wash. 624, 91 Pac. 11, 13 L. R. A. (N. S.) 990, 13 Ann. Cas. 923; *Berryman v. East Hoquiam Boom & Logging Co., supra; Ochfen v. Kominsky,* 121 Wash. 60, 207 Pac. 1050. Cf., *Long v. Leonard, supra.*

■ This last mentioned rule does not apply, how-

ever, to vacant, open, uninclosed, unimproved lands. In such cases, *mere use* of a way over the land of another, in the manner and for the time referred to in the last preceding rule, will not of itself give rise to a presumption that the use has been adverse, or, as sometimes expressed, to a presumption of a grant. Courts do not, in such cases, infer adverse user, but require evidence of facts or circumstances indicating that the user was indeed adverse and not permissive. 28 C. J. S. 672, 737, Easements, §§ 18(i), 68(a); 2 Thompson, Real Property (Perm. ed. 1939) 111, § 523; 4 Tiffany, Real Property (3d ed.) 565, § 1196a; note (1919) 1 A. L. R. 1368.

Thus, in *Watson v. County Commissioners, supra,* this court said:

"While we do not now hold that a right of way by prescription cannot be acquired over *wild, unoccupied prairie lands,* we do hold that, in order to give a prescriptive right, the use must at least be such as to convey to the absent owner reasonable notice that a claim is made in hostility to his title. It seems to us that any other rule amounts to a practical confiscation of private property for public purposes." (Italics ours.)

In *Schulenbarger v. Johnstone, supra,* this court seems to have gone even further by saying:

"*It can hardly be contended that it was ever the intent of the law to hold that a private easement could be created over the lands of another at a time when they were open and uninclosed. It has never been so held,* although the right be asserted by the public, unless under some controlling circumstances such as the expenditure of public moneys under the supervision of the road overseer, or some element of acquiescence on the part of the owner as instanced in the case of *State v. Horlacher,* 16 Wash. 325, 47 Pac. 748 [where this court upheld a judgment convicting the defendant upon a charge of obstructing a public highway which the county had acquired by prescription,

and upon which the county had expended money for several years]." (Italics ours.)

We do not now agree with that part of the *Schulenbarger* opinion which we have italicized. The books reveal many cases wherein, under particular sets of facts, private easements over the lands of others have been acquired by prescription, at a time when such lands were open and uninclosed. While there has been a wide divergence of opinion upon the subject, the prevailing view, and the principle which we now adopt, is that such prescriptive rights may be obtained when the facts and circumstances are such as to show that the user was adverse and hostile to the rights of the owner, or that the owner has indicated by some act his admission that the claimant has a right of easement. 2 Thompson, Real Property (Perm. ed. 1939) 111, § 523; 17 Am. Jur. 980, Easements, § 71; 28 C. J. S. 672, Easements, § 18(i); Note (1919) 1 A. L. R. 1368.

An adverse user will not ripen into a prescriptive right unless the owner of the servient estate knows of, and acquiesces in, such user, or unless the user is so open, notorious, visible, and uninterrupted that knowledge and acquiescence on his part will be presumed. *Downie v. Renton,* on rehearing, *supra;* see, also, 2 Thompson, Real Property (Perm. ed. 1939) 94, § 512; 17 Am. Jur. 976, Easements, § 65; 28 C. J. S. 647, Easements, § 12.

Failure on the part of the owner of the servient estate to interrupt the user of a right of way across his land by another is strong evidence that the parties thought that the way was used as a matter of right. *Wasmund v. Harm, supra; Long v. Leonard, supra.* See, also, *Lechman v. Mills, supra.*

It is not necessary to the establishment of a prescriptive right that the claimant make declarations

of an adverse intent during the period relied upon to establish such right, or that he testify later that his intent was of that character; the intentions and attitudes of the parties may be shown by evidence as to their conduct relative to the use of the right of way in question. *Wasmund v. Harm, supra; Hughes v. Boyer, supra.*

In determining whether or not the user of another's land has been adverse and whether or not the latter had the requisite notice thereof, the nature and location of the property involved are material and important considerations. *Downie v. Renton,* on rehearing, *supra.* Accord, *Murray v. Bousquet, supra.*

A prescriptive right, once acquired, cannot be terminated or abridged at the will of the owner of the servient estate, nor even by the oral admission of the easement claimant that his use was not, and is not, adverse. 28 C. J. S. 716, Easements, § 52; *McInnis v. Day Lbr. Co.,* 102 Wash. 38, 172 Pac. 844; *Downie v. Renton,* 162 Wash. 181, 298 Pac. 454, reversed, on rehearing, on other grounds, 167 Wash. 374, 9 P. (2d) 379.

We have enumerated and set forth the foregoing principles, not as a compendium of the general law of easements, but, as said before, rather as a statement of principles which either have been urged upon us by the parties herein, or else are necessary to a determination of the present issue.

Appellant concedes (1) that an easement of right of way may be acquired by prescription; (2) that the period required for the establishment of such prescriptive right is, in this state, ten years; and (3) that the use of appellant's land by respondent and its predecessor in title, from 1920 to 1936, was continuous and was sufficient to satisfy this temporal requirement. There is no contention in this case, by either party,

that the question of adverse user is not one of fact; on the contrary, each party vigorously contends that the evidence in the case is decisive of that question in its favor. With reference to the other principles above noted, our discussion proceeds upon the theory (1) that prescriptive rights are not favored in law; (2) that a user which is permissive in its inception confers no absolute right, no matter how long it may be continued; (3) that it is essential that all of the elements necessary to constitute a permanent, valid claim by adverse user amounting to a prescriptive right be shown to be present; (4) that the burden of proving a prescriptive right of easement over appellant's land was upon the respondent; (5) that respondent was required to prove that its use of appellant's land for the required period was open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner, and with the knowledge of such owner at a time when he or she was able in law to assert and enforce his or her right; (6) that respondent's user of the Clerf land did not ripen into a prescriptive right unless such user was with the knowledge and acquiescence of Mrs. Clerf or else was so open, notorious, visible, and uninterrupted that her knowledge and acquiescence is to be presumed; and (7) that no *declaration of an intention* on respondent's part to use appellant's land adversely was necessary to the establishment of the right here claimed.

Upon the record in this case, it is beyond cavil that the user of the north-south roadway through appellant's land from 1920 to 1936 was open, notorious, continuous, uninterrupted, and at a time when Mrs. Clerf, then owner of the land, was able in law to assert and enforce her rights. The evidence also preponderates in favor of the trial court's finding that during that period of time the user was exercised over a

uniform route. If, by the end of that period, a prescriptive right of easement was in law acquired by respondent, no subsequent act of appellant, who succeeded to the title of Mrs. Clerf, could in any way affect the right that respondent had previously acquired. All the evidence in the case is to the effect that respondent's original entry upon Mrs. Clerf's land was made without consulting her or anyone else at all. In fact, there is no evidence that Mrs. Clerf had any *actual* knowledge whatever that respondent or its predecessor had *entered* her land. Hence there is no room for any presumption that the original *entry* was made with her permission or in subordination to her title. However, the continued *use* of her land by respondent was so open, notorious, visible, and uninterrupted that it must be presumed that she, as the owner, became aware of it, especially since her land was located in an industrial section of a thriving city. Furthermore, as will be pointed out later, the evidence indicates that by her own act Mrs. Clerf indirectly recognized respondent's acquired prescriptive right.

This leaves, for determination, only the question as to whether or not the evidence was sufficient to prove that the user of the land by respondent and its predecessor in title was *adverse* to Mrs. Clerf. We arrive at a decision of that question by considering the facts and circumstances in connection with the user of the land.

In the first place, the acts of the power company, respondent's predecessor in title, constituted more than a mere use of the land for occasional travel over an undefined route. On the contrary, its acts were of such a nature as to indicate a hostile intent. The company deliberately laid out a definite road across the premises; it improved the road and made repairs from

year to year; it used the road regularly for hauling heavy loads of coke from its plant; and, in addition, it encouraged the public to use that method of ingress and egress to and from its premises. In short, the power company made the same use of appellant's land, to the extent noted, as it would have made if the land had been its own. Respondent gas company, successor to the power company, in turn continued to make the same use of the land during the remainder of the time that it was owned by Mrs. Clerf. On the other hand, so far as the record shows, Mrs. Clerf not only made no objection to the nature or extent of the use, but by her own deed to Charles S. Huff and his wife expressly excepted from the conveyance and warranty "rights of way for roads." The deed which appellant in turn accepted from the Huffs contained the same exception. These facts alone constitute strong evidence that the user was considered by the owners of the servient estate as being one of right, and not one by permission. That evidence was not rebutted. Mrs. Clerf was not called as a witness to explain her acts or omissions, nor was any reason given for the failure to call her. In addition to all this, when the question first became acute, in 1936 or 1937, appellant did not take any positive steps to interfere with respondent's acquired right, but rather, made provision for its continuance along, and through, a well-defined lane. We are convinced that the proof in this case was ample to establish an adverse user of the land in favor of respondent.

The second question presented upon the appeal relates to the width of the right of way to which respondent is now entitled.

The evidence shows that the roadway in use from 1920 to 1936 did not exceed twenty feet in width, whereas the fenced lane running through appellant's property has a width of approximately forty-eight feet.

The trial court granted an easement of the latter width, basing its decision on findings that Charles S. Huff had stated in 1937 that he was going to leave a *forty-foot* driveway across the land, that he had thereafter constructed and left open a lane through the property measuring, on the average, *forty-eight* feet in width, and that for the next three years he and appellant had acquiesced in the use of a roadway running through the lane. We are unable to agree with the court's conclusion that, upon these facts, respondent was entitled to a judgment "quieting its prescriptive title to a right of way across all of that portion of defendant's [appellant's] land included within the fences erected in 1937."

We have no cases in this state bearing directly upon the question under consideration, but by the great weight of authority the applicable rule, as stated in 28 C. J. S. 751, Easements, § 74, is:

"Where an easement is acquired by prescription, the extent of the right is fixed and determined by the user in which it originated, or, as it is sometimes expressed, by the claim of the party using the easement and the acquiescence of the owner of the servient tenement. While a prescriptive right to an *extended* easement may be acquired by excessive user, . . . yet an easement acquired by prescription cannot be *extended* except by an adverse user which has been acquiesced in for the requisite length of time, or by the acquisition by some other title of additional rights." (Italics ours.)

See, also, 28 C. J. S. 768, Easements, § 89, and 17 Am. Jur. 997, Easements, § 100.

Respondent cites a number of authorities dealing with the "re-location" of a right of way acquired either by prescription or by grant. Those authorities, however, do not sustain respondent's contention in this case. It has hereinbefore been shown that, by 1936

or 1937 when the fences were built, respondent had already acquired a prescriptive easement of right of way across appellant's land by means of a roadway not more than *twenty* feet in width. The user relied upon to establish the right of way was limited to that width, and that user determines the extent of the right acquired. Respondent could therefore have resisted any attempt to interfere with the right then enjoyed, and could even have resisted any attempt to compel a shift in the location of the right of way then used. Instead, it acquiesced in the erection of the fences which cut off the roadway theretofore used and tacitly accepted, in its place, a new right of way *within* the lane inclosed by Huff's fences.

Since Charles S. Huff could not have contested respondent's right to use the existing roadway, his successor in interest, the appellant, cannot claim that respondent's acquiescence in the shifting of the location of the roadway to conform with Huff's plans has in any way impaired respondent's previously matured prescriptive right. Nor can respondent, on the other hand, be heard to say that by acquiescing in this change of location it has acquired a more extended right than it had previously possessed. Respondent could not have acquired an enlarged right of way except by express grant or by prescription based on an *extended* user for an additional ten years, and hence it cannot claim such an augmented right merely on the basis of Charles S. Huff's action in fencing off a lane wider than the roadway which it had previously acquired the right to use. In fact, respondent has never used the full width inclosed by the fences, but has continued to use a roadway not more than twenty feet wide. The shifting of the roadway to make it more direct and to bring it within the lane fenced off by Charles S. Huff accomplished that and nothing more.

Each party is therefore estopped by its acquiescence to object to the continued use of the right of way as now located, and neither can claim that the other's rights have been impaired by this change in location.

The cause will be remanded to the superior court with direction to enter a decree establishing in respondent a prescriptive easement of right of way across appellant's premises, running through the fenced lane thereon and having a width of not more than twenty feet.

ALL CONCUR.

