[No. 44654. En Banc. November 10, 1977.]

W. T. WATTS, INC., *Respondent,* v. ROBERT E. SHERRER, ET AL, *Appellants,* MAX C. BORGESON, ET AL, *Respondents.*

246

*Kenneth D. Beckley,* for appellants.

*Reaugh, Hart, Allison, Prescott & Davis,* by *Keith R. Baldwin, Keller, Rohrback, Waldo & Hiscock,* by *Melvin F. Buol,* and *Venable & Wing,* by *Robert F. Venable,* for respondents.

ROSELLINI, J.—This case concerns a commercial building, containing seven rental units, located in the White Center area of Seattle. The respondent Max C. Borgeson and others (referred to herein collectively as Borgeson) purchased the building at a sheriff's sale, paying $59,000, an amount sufficient to cover the debt owed on the first mortgage. The appellants, holders of a third mortgage, redeemed the property 4 months later, pursuant to RCW 6.24.140, by paying the purchase price of $59,000 plus interest.

During the 4–month period when the property was in the possession of Borgeson, he had extensive work done upon the premises. Rents received during the period amounted to approximately $7,000. The "expenses of maintenance" were approximately $12,000. Included in them were certain repairs and alterations performed by the respondents Watts and Smith, at a cost of approximately $4,200, which were not requested nor authorized by the appellants. These respondents had no contact with the appellants; and,

according to their testimony, they had expected to be paid by Borgeson. Their claims remained unpaid when the property was redeemed by the appellants.

After the redemption, these respondents brought this action to foreclose labor and materialmen's liens which they had filed under RCW 60.04.010. The Superior Court awarded them personal judgments, including attorney fees, against Borgeson and ordered foreclosure of the liens, also including attorney fees.

The court denied the appellants' prayer for judgment over against Borgeson for the amount of the liens.

The court's ruling was based upon its finding that work done upon the premises constituted "desirable or necessary repairs and maintenance, or upkeep of said structure, and did not constitute substantial remodelling or renovation thereof" and that this work "improved the value of the property, and benefited any person who would have purchased [it]." The court held that Borgeson, as holder under the sheriff's certificate of purchase, was an "owner" of the premises in the sense that he could charge the property with the liens of mechanics and materialmen. Error is assigned to this holding, as well as to the finding that none of the work done upon the premises amounted to substantial remodeling or renovation.

We find that the Superior Court erred in ruling that Borgeson, as holder of a sheriff's certificate of purchase, was in a position to subject the interest of the redemptioner to the liens of mechanics and materialmen, without the redemptioner's consent or authorization. Since we hold that the appellants' interest was not subject to the liens and that there was no obligation to pay for labor or materials, the cost of which exceeded the income from the property, it is immaterial whether the work done constituted repairs or renovations, or whether it was necessary to maintain the premises.

■ RCW 60.04.010 authorizes a lien upon property for labor and materials furnished at the instance of the owner

or his agent. In construing this statute, this court, in common with courts in other jurisdictions construing similar statutes, has held that the lien attaches only to the *interest* of the person who requests the labor or materials, or the person for whom he acts as agent. *Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R.2d 1400 (1959), *Newell v. Vervaeke,* 189 Wash. 144, 63 P.2d 488 (1937) (a contract vendee subjects only his interest to the lien, unless the sale contract requires him to improve the premises); *Larson v. Duclos,* 46 Wn.2d 334, 281 P.2d 458 (1955) (an administrator of an estate cannot subject its assets to a lien); *Bengel v. Bates,* 29 Wn.2d 779, 189 P.2d 480 (1948) (where a lease permits but does not require the lessee to remodel the premises, only the lessee's interest is subjected to a lien contracted by him). To the same effect are *Stetson–Post Mill Co. v. Brown,* 21 Wash. 619, 59 P. 507 (1899); *Seattle Ass'n of Credit Men v. Daniels,* 15 Wn.2d 393, 130 P.2d 892 (1942) and *Bunn v. Bates,* 31 Wn.2d 315, 196 P.2d 741 (1948). These holdings conform to the general rule. 53 Am. Jur. 2d *Mechanics' Liens* § 122 (1970); 57 C.J.S. *Mechanics' Liens* § 57 (1948).

As these cases make clear, the mere fact that an owner's interest is benefited by labor performed or materials furnished will not make the interest lienable.

■ This court has recognized long ago that a sheriff's certificate of purchase does not pass title but is only evidence of an inchoate interest which may or may not ripen into title. *Carroll v. Hill Tract Improvement Co.,* 44 Wash. 569, 87 P. 835 (1906). *Gray v. C. A. Harris & Son, Inc.,* 200 Wash. 181, 93 P.2d 385 (1939), is in accord, and, while the principle is not expressly stated in *Berkheimers, Inc. v. Sprinkle,* 66 Wn.2d 354, 402 P.2d 502 (1965), it is implicitly recognized therein.

RCW 6.24.210 gives the purchaser the right to possession during the period of redemption; RCW 6.24.140 gives him the right to receive, upon redemption, the purchase price which he paid, plus interest, and plus the amount of any

prior lien which he may hold by judgment, decree, or mort-gage (other than the judgment under which the purchase was made), and any assessments or taxes which he has paid, plus interest; and RCW 6.24.160 gives him the right to a conveyance at the expiration of the redemption period.

We need not decide whether a lien for labor or materials contracted for by the purchaser will attach to all of these rights. There should be no question that it will attach to the right to receive the purchase price, if the property is redeemed, and to the fee if the purchaser's interest ripens into ownership.

Did it attach also to the interest of the appellants when they redeemed the property? From the cases we have cited, it will be seen that, where the contracting party does not own the fee, another's interest in the property will be sub-ject to a mechanics' or materialmen's lien only if the con-tracting party acts as his agent. Thus, where a lease or contract of sale requires the construction of a building on the premises, the lessee or vendee will be deemed to be the agent of the lessor or vendor in contracting for labor and materials to fulfill this obligation.

Here there is no suggestion that Borgeson, the contract-ing party, acted as an agent of the appellants, or that the appellants consented to or authorized the repairs or reno-vations in any manner. On the contrary, the evidence was that, 2 weeks after the foreclosure sale, the appellants, through their attorney, notified Borgeson that they intended to redeem the property and to insist upon their rights under the redemption statutes.

█ The theory appears to be that Borgeson, as pur-chaser at the sheriff's sale, was obliged to repair and main-tain the property, and that it must have been the legislative intent that any lien for work and materials furnished for this purpose would attach to the fee and become a burden upon the interest of any statutory redemptioner.

Such an interpretation does not accord with our reading of the statute regulating judicial sales. Nowhere is the pur-chaser expressly required to make repairs. He is permitted

to do so under RCW 6.24.200,[1] a section which authorizes the court, during the redemption period, to restrain the commission of waste on the property. And if an accounting is requested by a redemptioner, the purchaser is allowed to offset the "expenses paid for operating, caring for, protecting and insuring the property," against the rents or profits received from such property. RCW 6.24.190.[2] He is not, however, given the right to an affirmative judgment for expenses incurred over and above the amount of the rents and profits, and under RCW 6.24.140,[3] the redemptioner is not required to reimburse him for expenses incurred for repairs and maintenance.

This court so held in *State ex rel. Bryant v. Starwich,* 131 Wash. 101, 229 P. 12 (1924). Construing RCW 6.24.190.

---

[1] "Until the expiration of the time allowed for redemption the court may restrain the commission of waste on the property. But it is not waste for the person in possession of the property at the time of the sale or entitled to possession afterwards during the period allowed for redemption to continue to use it in the same manner in which it was previously used, or to use it in the ordinary course of husbandry, or to make the necessary repairs of buildings thereon, or to use wood or timber on the property therefor, or for the repairs of fences, or for fuel in his family while he occupies the property." RCW 6.24.200.

[2] "The purchaser, from the time of the sale until the redemption, and the redemptioner from the time of his redemption until another redemption, except as hereinafter provided, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. But when any rents or profits have been received by such person or persons thus entitled thereto, from the property thus sold, preceding the redemption thereof from him, the amount of such rents and profits, over and above the expenses paid for operating, caring for, protecting and insuring the property, shall be a credit upon the redemption money to be paid; . . ." RCW 6.24.190.

[3] "Unless redemption rights have been precluded pursuant to RCW 61.12.093 et seq., the judgment debtor or his successor in interest, or any redemptioner, may redeem the property at any time within one year after the sale, on paying the amount of the bid, with interest thereon at the rate of eight percent per annum to the time of redemption, together with the amount of any assessment or taxes which the purchaser or his successor in interest may have paid thereon after purchase, and like interest on such amount; and if the purchaser be also a creditor having a lien, by judgment, decree or mortgage, prior to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest: . . ." RCW 6.24.140.

(which was then Rem. Comp. Stat. § 600), we said that this section does not entitle the purchaser to receive from the redemptioner the amount of expenses in excess of rents and profits; and such section cannot be invoked by a purchaser whose expenses exceeded the rents and profits received. It was said that if the redemptioner were required to pay the purchaser for expenditures in excess of the income produced by the property, the purchaser could make the right to redeem so burdensome as to amount to a denial of the right. The redemptioner is required to pay only what the statute specifies, we said, and this does not include reimbursement for expenditures.

To hold that a purchaser may nevertheless subject the redemptioner's interest to a lien for repairs and maintenance, without the redemptioner's consent or authorization, would be to permit him to accomplish indirectly that which the statute will not allow him to do directly. This would thwart the expressed legislative intent, which was to give the debtor or lien holder an opportunity to redeem the property upon the least onerous terms which justice would allow. In line with this intent, the statute does not purport to encourage the making of repairs or renovations which would enhance the value of the property for subsequent owners. If such repairs or renovations are contracted for, they must be deemed to have been the sole undertaking of the purchaser, pursued at his own risk, in the absence of any contractual commitment of the redemptioner, either express or implied by his conduct.

The parties cite no case in which a mechanics' lien was claimed against the interest of either a purchaser at a foreclosure sale or a redemptioner. Our research has revealed none in which such a lien was claimed against the interest of a redemptioner. We have, however, found two in which a lien was asserted against a purchaser's interest. *Bankers' Bldg. & Loan Ass'n v. Fleming Bros. Lumber Co.*, 83 Colo. 335, 339, 264 P. 1087 (1928), involved liens against the interest of a purchaser of certain lots which had been subject to a deed of trust. After the purchase, assignees of the

trustor, remaining in possession, contracted for certain building work to be done on the premises. The defendant foreclosure purchaser had not given the statutory notice required to protect himself, and it was held that his interest was subject to the lien.

The court said that the equitable title acquired by the purchaser at the foreclosure carried with it the absolute right to a deed at the end of the redemption period, provided the property was not redeemed in the meantime. This interest was assignable and transferable, and the lien could attach to it. The court also held that the lien attached to the fee when the purchaser acquired it, giving effect to a statute which provided that the lien should "'extend to and embrace any additional or greater interest in any of such property acquired by such owner at any time subsequent to . . . the commencement of the work.'"

The case is significant, although it does not involve an attempt to enforce a lien against a redemptioner. It recognizes that the lien attaches to the interest of the person who contracts (or under the particular statute involved there, is *presumed* to contract) for the labor and materials. It also recognizes that the purchaser at foreclosure has only an inchoate interest and does not obtain fee title until the redemption period is ended.

In *Robbins v. Arendt,* 148 N.Y. 673, 43 N.E. 165 (1896), it was held that when the mortgagor, after foreclosure, remains in possession, under an agreement with the purchaser, and contracts for the construction of a building, one furnishing material for the construction cannot acquire a mechanics' lien therefor, against the purchaser, after the mortgagor has in good faith paid the contractor for the work done, even though the work was done with the purchaser's knowledge and consent. The court did not decide whether a lien would have attached in the absence of such payment.

The difference in the result reached in these two cases can be explained, at least in part, by the fact that in *Robbins v. Arendt, supra,* there appears to have been no

statute providing that, unless he gives notice within a specified time after he learns that work is in progress, a noncontracting owner's interest will be subject to the lien.

After *Robbins v. Arendt, supra,* was decided, the rule of the case was changed by statute. *See Jensen on Mechanics' Lien Law of the State of New York* § 44 (4th ed. E. Marks 1963). 32 N.Y. *Lien Law* § 2(3) (McKinney) provides that the purchaser at a judicial sale shall be deemed the owner from the time of such sale. However, if he fails to complete the purchase pursuant to the terms of the sale, all liens created by his consent after such sale shall be a lien on any deposit made by him and not on the real property sold.

This statute expresses the same intent that we find in our statute governing judicial sales—that is, that the purchaser at a judicial sale may not subject the interest of a redemptioner to liens for repairs and improvements, in the absence of an undertaking on the latter's part, express or fairly implied, to pay for them in the event he redeems the property.

This court in *State ex rel. Bryant v. Starwich, supra,* said by way of dictum that the purchaser may have a remedy "upon some equitable principle" if the improvements undertaken have enhanced the value of the property. We will assume, without deciding, that a labor and materialmen's lien might properly be held to attach to such a remedy, as an "interest" of the purchaser. Some early cases have allowed the purchaser to recover the enhanced value of the property, under the particular circumstances involved. Without discussion of authority, the Supreme Court of Rhode Island, in *Cosgrove v. Merz,* 37 A. 704 (R.I. 1897), allowed an execution purchaser to recover the amount by which the value of the premises had been enhanced by "necessary repairs." The Tennessee Supreme Court held in *Paul v. Williams,* 80 Tenn. (12 Lea) 215 (1883), that a purchaser at a judicial sale who put improvements on the land with the consent of the party owning the equity of redemption was entitled to the value of the improvements to the extent that they permanently

enhanced the value of the land, less the rents and profits. In another Tennessee case, *Gamble v. Branch,* 52 S.W. 897 (Tenn. Ch. App. 1898), creditors purchased property at a chancery court sale. The owners led them to believe that they did not intend to redeem and stood by encouraging expenditures for improvements and promised to become tenants of the purchaser. The purchaser was given a lien on the land when it was redeemed, for the amount by which its value had been enhanced.

In a much more recent case in equity, *Sedlak v. Duda,* 144 Neb. 567, 13 N.E.2d 892, 154 A.L.R. 490 (1944), the Nebraska Supreme Court refused to allow a foreclosure purchaser to recover the value of improvements, where it was shown that he had knowledge of the plaintiff's equitable right of redemption.

None of these cases was decided under a redemption statute, such as we have, but it will be seen that they do not reject the principle that, if the purchaser at a judicial sale is aware of the redemptioner's right and the redemptioner does nothing to mislead him, he cannot burden the redemptioner with the value of improvements which he voluntarily constructs on the property.

■ It is suggested that the appellants ought at least to be required to pay for the enhanced value of the property (although the court made no finding with respect to the amount of such increased value).[4] It is argued that because the value of the property was enhanced, the appellants were unjustly enriched. No case is cited which supports this theory. Enhancement in value, standing alone, does not

---

[4]While it is not material to our disposition of the question presented on this appeal, we note an inconsistency in the findings of the trial court as well as the respondents' arguments on appeal. The finding and the contention on the one hand is that the work done was only that which was necessary to maintain the premises and on the other that it greatly enhanced the value of the property. It is commonly understood and accepted that ordinary repairs and maintenance do not enhance the value of property but, by definition, only preserve it. If the value of the property is enhanced, the undertaking is not a mere repair but rather an improvement. *See* 36A Words and Phrases 754–59 (1962); Black's Law Dictionary 890, 1462 (4th ed. rev. 1968).

invoke the doctrine of unjust enrichment. A person who officiously confers a benefit upon another is not entitled to restitution therefor. Restatement of Restitution § 2 (1937). *And see* 41 Am. Jur. 2d *Improvements* §§ 15–17 (1968). Not only was Borgeson notified by the statutes of the possible existence of redemptioners, but he had actual knowledge of the appellants' right of redemption, of their intention of exercising that right, and of their unwillingness to pay for any renovations which Borgeson might make on the property. When, in spite of this knowledge, Borgeson proceeded to contract for work and materials costing more than the income from the property would finance, his act was an officious one.

The trial court erred in foreclosing the mechanics' and materialmen's liens against the property in the hands of the appellants. That portion of the judgment is reversed. The judgment in favor of the respondents Watts and Smith against Borgeson is not challenged and remains in force.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACH-TENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

Petition for rehearing denied January 30, 1978.