**Gunda M. GALLOWAY and Laurence Galloway, Plaintiffs,**

v.

**Rowland H. MERRILL, Jr.; Guardian Title Company of Utah, Trustee; Brian Steffensen, Attorney at Law; Land Acquisition and Development Company; Joseph R. Brunetti; Robert L. Lord, Attorney at Law; Robert B. Brown, Attorney at Law; Aposhian, Snideman &**

**Associates, Inc.; American Hotel Developers, Inc.; North Temple Ltd.; Plaster De'cor, Inc.; Marcia S. Merrill; The State of Utah; Robert B. Brown; and John Does 1-10, Defendants and Appellants,**

v.

**Gloria RUIZ d/b/a CVF Land Investment, Appellee.**

No. 890644-CA.

Court of Appeals of Utah.

Nov. 16, 1990.

Vincent C. Rampton (argued), Watkiss & Campbell, Salt Lake City, for defendant and appellant Marcia S. Merrill.

Jax H. Pettey (argued), Salt Lake City, for appellee Ruiz dba CVF Land Inv.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Marcia S. Merrill (Merrill) appeals a trial court's order that she pay $45,186.22 to redeem a parcel of real property that had been purchased at a sheriff's sale by appellee Gloria Ruiz d/b/a CVF Land Investment (Ruiz). We reverse.

## BACKGROUND

The property in question is located in Salt Lake City. It had been purchased in 1978 by Merrill's former husband from Gunda and Laurence Galloway, under a uniform real estate contract. Mr. Merrill fell behind in his payments, and in December 1988, the Galloways sued to foreclose the contract as a mortgage, and obtained a judgment against him. In February 1989, a sheriff's sale was held to satisfy that judgment, and Ruiz purchased the property for $28,000.

Ruiz's purchase was subject to the six month postsale redemption rights of those holding interests in the property subordinate to that of the Galloways. *See* Utah R.Civ.P. 69(e)(6), (f)(1) and (3) (1990). Merrill held such a redemption right as a judgment creditor of her former husband, pursuant to their 1983 divorce decree.

Several days after the sheriff's sale, Ruiz received an order from Salt Lake City Corporation directing her to demolish the buildings on the property because of their dangerously dilapidated condition. The buildings consisted of a small house with a five- to six-foot crawlspace underneath it, and several outbuildings. Ruiz was to comply with or appeal the order within ten days. According to the order, failure to respond could result in the city demolishing the buildings and billing Ruiz for the work, or in a criminal citation. Ruiz gave the order to her realtor, Jay Hansen. Hansen spoke with city officials about the order, successfully appealed the landscaping requirements usually required for a demolition permit, and hired a contractor, Cliff Johnson Excavating, to perform the work.

The demolition was completed in March 1989. In addition to demolishing the buildings and filling the crawlspace, Hansen and Ruiz also had Johnson remove several trees from the property and add fill to the entire lot, elevating it some eighteen inches to street level. The demolition and tree removal cost Ruiz $3,210. The fill cost $9,695, bringing the total cost of the work to $12,905.

Merrill filed her notice of intent to redeem the property in August 1989, within the six month redemption period. As required by Utah R.Civ.P. 69(f)(3), Merrill was prepared to pay Ruiz's purchase price, plus a six percent surcharge, plus interest at ten percent per annum, plus $500 for property taxes Ruiz had paid subsequent to her purchase. However, Merrill objected to paying Ruiz's $12,905 demolition and fill costs. An evidentiary hearing on the propriety of adding these costs to the redemption price was held in September 1989.

Utah R.Civ.P. 69(f)(3) governs the redemption of property sold at sheriffs' sales. The rule provides, in relevant part and with our emphasis:

> The property may be redeemed from the purchaser within six months after the sale on paying the amount of his purchase with 6 percent thereon in addition, together with the amount of any assessment or taxes, and any *reasonable* sum for fire insurance and *necessary* maintenance, upkeep, or repair of any improvements upon the property which the purchaser may have paid thereon after the purchase, with interest on such amounts....

At the evidentiary hearing, Merrill argued that Ruiz's demolition and fill costs had not been necessary and, therefore, could not be added to the property's redemption price. She also argued that, to whatever extent the costs had been necessary, they had been unreasonably high.

Ruiz attempted to admit the city demolition order into evidence. Upon Merrill's objection that the document was not authenticated, the court admitted it "not for the truth of its content, but to explain why [Ruiz] did what she did." However, the landscaping appeal prepared by Hansen was admitted into evidence, as was the city's letter granting the appeal. This letter also specified that the property was to be "graded" after the demolition.

Ruiz testified that she did not believe she had been ordered to remove the trees from the property; rather, she had them removed because she thought they posed a breakage hazard. Ruiz also testified that she knew the redemption period was in effect at the time she ordered the work done.

Jay Hansen testified for Ruiz. He testified that a city official had told him that "we had to fill the property, we had to grade it," but this testimony was stricken as hearsay. He was allowed to testify that it had been his "understanding" that the demolition was to include having the property "cleared off and graded." He testified that the property lay below the level of the streets and neighboring property, and collected trash. Therefore, elevating it "was part of the problem of getting the property acceptable."

Hansen also testified that Cliff Johnson Excavating had given the lowest of three bids Hansen had solicited for the work on the property. The $12,905 paid for the work was the price bid, and Hansen did not believe this figure was unreasonable.

John McCaughey, a demolition contractor with extensive experience in Salt Lake City, testified for Merrill as an expert witness. He testified that, in his experience, neither elevating the entire property nor removing trees would be a necessary part of a demolition project under applicable city ordinances. Only filling the crawlspace beneath the house would be necessary. Tree removal would be prohibited absent special permission from the city. McCaughey was familiar with the subject property, and testified that he would have bid $1,800 to demolish the buildings and fill the crawlspace; tree removal would have brought his total bid to $2,500. McCaughey made no estimate of what he would have bid to add the eighteen inches of fill over the entire property.

After the testimony, Merrill provided the trial court with a copy of Salt Lake City, Utah, Ordinance 18.64.050 (1988) regarding demolition permits. The ordinance requires the removal of all parts of demolished structures from the demolition site. Then, "[t]he depression caused by removal of such debris must be filled back and compacted to the original grade, as approved by the building official...." *Id.*

The trial court did not contest Merrill's assertion that the city demolition ordinance did not require raising the entire property level. Nevertheless, and despite observing that Ruiz's expenditure on the property during the redemption period was "probably not too prudent," the court found that the entire $12,905 "was a reasonable sum expended for necessary improvements upon the property," and ordered the entire amount, with interest, included in the redemption price. In connection with this finding, the court expressed its concern that, if the $12,905 were not included in the

redemption price, Merrill would receive a benefit that she did not pay for in redeeming the property.

On appeal, Merrill asserts that the trial court erred by (1) implicitly holding that Rule 69(f)(3), Utah R.Civ.P., permits the addition to the property redemption price of any preredemption expenditure that might benefit the redemptioner; (2) finding the $12,905 to be a necessary expense for the maintenance, upkeep, or repair of the property; and (3) finding the $12,905 to be a reasonable price for the work done on the property.

### ANALYSIS

#### Benefit to the Redemptioner

■ The implicit holding that Utah R.Civ.P. 69(f)(3) permits adding to the redemption price of property the cost of any preredemption work that might benefit the redemptioner is a question of statutory construction, a legal issue that we review without deference to the trial court. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989). Absent ambiguity, we construe Rule 69(f)(3) according to its plain language. *Id.*

■ We find no ambiguity in the language of Rule 69(f)(3) at issue here. The rule plainly adds to the property's redemption price "any reasonable sum for ... necessary maintenance, upkeep, or repair" of the property during the redemption period, with interest thereon. We read this to mean that, in order to be included in the redemption price, anything done to the property by the sheriff's sale purchaser must be necessary, either to keep the property in the same condition as when purchased or, as here, to avoid civil or criminal liability. Expenses on the property not serving these ends, unless consented to by the prospective redemptioner, cannot be added to the redemption price, regardless of whether the redemptioner might be benefited by that work.

■ The addition of preredemption expenses to the redemption price simply because those expenses may have enhanced the value of the subject property was specifically rejected by the Washington Supreme Court, interpreting Washington's redemption statute. *W.T. Watts, Inc. v. Sherrer*, 89 Wash.2d 245, 571 P.2d 203 (1977) (en banc). The court noted, "A person who officiously confers a benefit upon another is not entitled to restitution therefor." *Id.* at 209 (citations omitted). We agree.

We also note that one purpose of Rule 69(f) is to preserve the redemption rights of all parties having an interest in property sold to satisfy a judgment. Previous cases interpreting the rule have protected redemption rights against hypertechnical application of procedural requirements. *See, e.g., United States v. Loosley*, 551 P.2d 506, 508 (Utah 1976); *Tech–Fluid Services, Inc. v. Gavilan Operating, Inc.*, 787 P.2d 1328, 1335 (Utah Ct.App.1990). The addition of unnecessary and unconsented expenditures to the redemption price also erodes redemption rights, and is improper under Rule 69(f)(3). *See W.T. Watts, Inc.*, 571 P.2d at 206. Similarly, such expenditures as are necessary must also be reasonable in amount under the rule, to avoid artificially inflating the redemption price.

#### "Necessary and Reasonable"

We deal with Merrill's arguments on the necessity and reasonableness of Ruiz's expenditures under one heading, since both arguments attack the trial court's findings of fact. In issues tried to the bench, we do not set aside fact findings unless they are clearly erroneous. Utah R.Civ.P. 52(a). To demonstrate clear error, an appellant must marshal all the evidence supporting the trial court's findings and show that, viewing it in the light most favorable to the trial court, the evidence fails to support the findings. *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).[1]

---

1. Merrill has not addressed this oft-cited standard of review, nor has she made a clear effort to marshal the evidence supporting the trial court's findings. Such an omission can sometimes be fatal to an appeal. *See Scharf*, 700 P.2d at 1070 (trial court's fact findings upheld

■ Here, proper authentication of the demolition order would have been the preferred method of proving the necessity of the demolition. However, other evidence before the trial court was sufficient to support a finding that the demolition was necessary. Ruiz's written application for an exception to the landscaping requirement, prepared by Hansen, was in evidence without limitation on its purpose. The application states that the demolition was pursuant to a city order. The letter granting the exception was also in evidence. That letter identifies the property as a neighborhood problem that had been under city "enforcement." The letter came from the same office as the demolition order, and did not deny the existence of the order. Thus there was no error in finding that the demolition had been ordered by the city and was therefore necessary.

There was insufficient evidence, however, to find that it was necessary, as a part of the ordered demolition, to add fill elevating the entire property. The only evidence supporting such a finding was Jay Hansen's "understanding" that the property needed to be elevated to become "acceptable." Hansen was not qualified as an expert on city demolition requirements, and his understanding was apparently based solely on city instructions that the property be "graded" after demolition of the buildings. Neither the city order nor the subsequent letter indicate that "grading" means elevating the property.

Furthermore, Hansen's understanding was rebutted by city ordinance § 18.64.050 and the testimony of Merrill's expert, McCaughey, who was experienced working under the ordinance. The ordinance only requires filling holes left by demolition and leveling the property to its "original grade," and in no way suggests that "original grade" means anything other than pre-demolition grade. McCaughey confirmed that the city would not have required elevation of the entire property as part of the demolition.

Not even the supporting evidence shows that Ruiz's expenditure to elevate the entire property was necessary. Therefore, this aspect of the trial court's findings was clearly erroneous, and is set aside. The property's redemption price must exclude the amount spent for the extra fill beyond that needed to fill the crawlspace.

It also appears that tree removal was not necessary under the demolition order. In fact, according to McCaughey, this was prohibited absent special permission, and there is no evidence that such permission was obtained here.

■ As to the reasonableness of the amounts paid, there was no clear error in finding that $3210 paid to Cliff Johnson Excavating was a reasonable amount to pay for the demolition and tree removal. This finding was supported by testimony that Johnson was the lowest bidder for the work, which was bid and performed on short notice. While McCaughey might have charged substantially less for the work, his contradictory testimony, by itself, does not make the supporting evidence inadequate to support the trial court's finding that the amount actually paid was reasonable. The reasonableness of the amount paid for extra fill to elevate the entire property need not be addressed, since we have already determined that this was not necessary.

The demolition price paid by Ruiz does not show the amount allocable to the tree removal, and the total fill price does not distinguish the amount used for the crawlspace fill. We must remand, therefore, for appropriate calculation by the trial court of amounts recoverable by Ruiz for demolition without the tree removal and fill for the crawlspace only.

where appellant made no effort to marshal evidence). Here, however, Merrill's complete and concise presentation of the facts is reasonably equivalent to marshaling, and we proceed to the merits of her argument.

## CONCLUSION

This matter is reversed and remanded to the trial court for recalculation of the redemption price of the property consistent with this opinion.

BENCH and GARFF, JJ., concur.