# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JP MORGAN CHASE BANK, NA | No. 80775-7-I |
| Plaintiff, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| THE UNKNOWN HEIRS AND DEVISEES OF JOHN M. PORTER; CLYDE W. PORTER; OCCUPANTS OF THE PROPERTY, | |
| Defendants, | |
| MADRONA LISA LLC, successor in interest, | |
| Appellant, | |
| VERA SEMENYUK, purchaser of foreclosed property. | |

APPELWICK, J. — The right of redemption of foreclosed real property was quit claimed by parents, as heirs of a decedent debtor, to Madrona Lisa. Madrona Lisa as a successor in interest to the debtor attempted to redeem the foreclosed real property. The trial court denied the right of redemption on the basis that the deceased debtor's estate had not been subject to probate administration. Absent administration of the decedent's estate, the quit claim deeds executed by the parents conveyed whatever vested interest they possessed in the redemption rights. That interest was subject to potential claims of other heirs and of creditors,

Citations and pin cites are based on the Westlaw online version of the cited material.

both in their hands and in Madrona Lisa's. However, the fact that these potential claims remained did not disqualify Madrona Lisa as a successor in interest. We reverse and remand to allow Madrona Lisa to redeem the property.

FACTS

John M. Porter died on April 30, 2017. He was survived by his parents, Clyde H. Porter and Sally Berg, and his brother, Clyde W. Porter. His parents indicated he left no will, was unmarried, and had no children. At the time of his death, he was the owner of property at 11332 1st Place West in Everett, Washington (the property). The property was encumbered by a deed of trust held by JP Morgan Chase Bank NA. No administration of his estate was filed.

On January 31, 2018, JP Morgan filed a complaint in Snohomish County Superior Court seeking to foreclose on the property. JP Morgan personally served Porter's brother and served the unknown heirs, including the parents, by publication. No defendants appeared to defend the action. The court entered an in rem default judgment and decree of foreclosure on the property on August 10, 2018.

The Snohomish County Sheriff held a foreclosure sale on February 15, 2019. Vera Semenyuk purchased the property for $218,531.00. The court entered an order confirming the sale on April 17, 2019.

In May 2019, John Porter's parents conveyed their interest in the property to Madrona Lisa LLC, via quitclaim deeds. Both deeds were duly recorded.

On August 21, 2019, Madrona Lisa submitted its intent to redeem the property as the successor in interest to the unknown heirs of Porter to the

2

Snohomish County Sheriff's Office. On August 27, 2019, Semenyuk submitted a letter to the sheriff's office objecting to Madrona Lisa redeeming the property. She argued that Madrona Lisa could not redeem the property because Porter's estate had not been probated. She nevertheless indicated that, if it was determined that Madrona Lisa could redeem the property, it would need to pay $283,472.85 in order to redeem the property.[1]

On August 30, 2019, prior to being informed of Semenyuk's objection or redemption calculation, Madrona Lisa delivered a cashier's check for $222,355.29 to the sheriff's office. Madrona Lisa later tendered the additional $61,117.56 difference between its calculation and Semenyuk's to the sheriff. Because of the dispute over Madrona Lisa's right to redeem, the sheriff's office declined to take any action without a court order.

Madrona Lisa filed a motion to direct the sheriff to issue a certificate of redemption in Snohomish County Superior Court. The court denied the motion. Madrona Lisa moved for reconsideration. The court denied the motion.

Madrona Lisa appeals.

DISCUSSION

Madrona Lisa argues that it should be permitted to exercise the right of redemption as a successor in interest to Porter. It argues that the trial court erred in denying its motion to compel the sheriff to issue a certificate of redemption and its subsequent motion for reconsideration. Madrona Lisa also argues that its

---

[1] Semenyuk based her calculation on following amounts: (1) $218,531.00 judgment, (2) $58,590.11 interest, (3) $789.10 "administration," (4) $290.00 filing fees, and (5) $5,263.64 attorney fees.

original calculation for the amount necessary to redeem the property was correct. Semenyuk requests she be compensated for her attorney fees and other expenses.

I. Madrona Lisa was a Successor in Interest

Chapter 6.23 RCW allows a judgment debtor or their successor in interest to redeem property sold at a foreclosure sale by paying the purchaser the sale price plus interest and taxes. RCW 6.23.010(1)(a), .020(2). The judgment debtor must exercise this right within either one year or eight months after the date of sale. RCW 6.23.020(1). Here, the redemption period was eight months. Madrona Lisa timely initiated redemption.

Madrona Lisa argues that it should be able to redeem the property because it is a successor in interest of the holders of the rights to redeem, Porter's parents. Semenyuk does not dispute that Porter's parents were his heirs. Rather, she argues that John Porter's estate needed to be probated in order for the property to pass to them, and subsequently to Madrona Lisa.

Madrona Lisa disagrees. It relies on RCW 11.04.250, which reads,

> When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his or her title shall vest immediately in his or her heirs or devisees, subject to his or her debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent, and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of a decedent: PROVIDED, that no person shall be deemed a devisee until the will has been probated. The title and right to possession of such lands, tenements, or hereditaments so vested in such heirs or devisees, together with rents, issues, and

4

profits thereof, shall be good and valid against all persons claiming adversely to the claims of such heirs, or devisees, excepting only the personal representative when appointed, and persons lawfully claiming under such personal representative; and any one or more of such devisees, or their grantees, jointly or severally, may sue for and recover their respective shares or interests in any such lands, tenements, or hereditaments and the rents, issues, and profits thereof, whether letters testamentary or of administration are granted or not, from any person except the personal representative and those lawfully claiming under such personal representative.

(Emphasis added.) Madrona Lisa argues that this statute clearly and unambiguously states that title to real property passes immediately to the decedent's heirs upon death, in this case, Porter's parents. Porter's parents transferred their immediately-vested right to redemption to it via quitclaim deeds.

This court interprets the meaning of statutes de novo. Wrigley v. State, 195 Wn.2d 65, 71, 455 P.3d 1138 (2020). The ultimate objective is to ascertain and carry out the legislature's intent. Id. Where a statute's meaning is plain on its face, courts must give effect to the plain meaning as an expression of legislative intent. State ex rel. Citizens Against Tolls (CAT) v. Murphy, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). Plain meaning is determined from the language, the statute's context, related provisions, and the statutory scheme as a whole. Wrigley, 195 Wn.2d at 71. The court must construe the statute as a whole, giving effect to all of the language used and interpreting provisions in relation to one another. Id. Where the meaning of a statute is ambiguous, courts may resort to statutory construction, legislative history, and relevant case law to discern the drafter's intent. State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)

While "title" is usually conceived as fee interest, the text of the statute makes clear that the title it confers is something less. See RCW 11.04.250. It indicates that title vests immediately "subject to [the decedent's] debts, family allowance, expenses of administration, and any other charges for which such real estate is liable under existing laws." Id. Several important property rights remain with the estate until these other statutory preferences are satisfied. See 11 Thompson on Real Property, Third Thomas Edition § 91.02 (David A. Thomas ed. 2015); In re Poli's Estate, 27 Wn.2d 670, 676, 179 P.2d 704 (1947) ("The rights of heirs under the statute with reference to vesting of title are subject to other statutory preferences."); Wendler v. Woodward, 93 Wash. 684, 685-86, 161 P. 1043 (1916) ("While it is true that the heirs take title immediately, the administrator has the right of possession and the concomitant right to recover possession for the estate."); In re Peterson's Estate, 12 Wn.2d 686, 734, 123 P.2d 733 (1942) (heirs do not have the right to treat the property as their own until the estate has been closed).

The personal representative may exercise the right of redemption on real property in the estate, and "any person interested" may apply to the court to order the personal representative to do so. RCW 11.56.220. Likewise, RCW 11.56.050 provides that the personal representative retains the right to sell real property in the estate if a court determines it to be necessary.

The "principal reason" for requiring official administration of the estate is the orderly disposition of creditor's claims to the estate. Murphy v. Murphy, 42 Wash. 142, 148, 84 P. 646 (1906). Administration may also be necessary to determine

6

the proper heirs to the estate.[2]  In re Mundt Estates, 169 Wash. 593, 597-98, 14 P.2d 59 (1932).  Administration of the estate serves to resolve any competing claims, which the heirs take their title subject to, that prevent them from acquiring full legal title.  See Murphy, 42 Wash. at 148.  The personal representative may then convey the real property to the heirs at the conclusion of administration.  See RCW 11.68.090.

Administration of the estate is not necessary to effect a transfer of title of real property from decedents to their heirs in all cases.  In Murphy, our Supreme Court held that administration was unnecessary to transfer title of real property in King County to a decedent's heirs where probate of the decedent's will had already occurred in Iowa.  Murphy, 42 Wash. at 150.  The court observed that courts should "sanction the disposition of property of a decedent without the appointment of an administrator where it is certain that no debts are owing."  Id. at 148.  The Murphy court found that no debts were owing because the estate had been fully settled via probate in Iowa.  Id. at 147-48.  It also observed that any potential claims against the estate had "been long since barred."  Id. at 149.  The court concluded that administration under the circumstances would be a "'useless ceremony'" because a decree of the court was not necessary to protect the heirs' title.  Id.

Here, the need for administration was minimal.  Porter died on April 30, 2017.  The record does not indicate that any creditor claims had been made by April 30, 2019, 24 months later.  All potential creditor's claims that had not been

---

[2] Probate is also necessary to give effect to the decedent's will.  In re Hyde's Estate, 190 Wash. 88, 92, 66 P.2d 856 (1937) (a will has no effect unless probated).  Because Porter died intestate, that purpose is inapplicable here.

made against the estate were time-barred under RCW 11.40.051(1)(c). This occurred before Madrona Lisa submitted its intent to redeem the property on August 21, 2019. Administration of the estate was not necessary to resolve creditor's claims against the estate assets.

The only known asset was title to the property.[3] The key question was who was entitled to receive that conveyance. A spouse or children would have superior claim to the property, but none have been identified and the parents declared none existed. RCW 11.04.015. Only three potential heirs were identified, Porter's mother, father, and brother. The parents have priority over the decedent's brother under RCW 11.04.015. On the record before us, administration of the estate was not necessary to determine that the parents were the presumptive heirs in whom title vested under RCW 11.04.250. See Mundt Estates, 169 Wash. at 597-98.

Absent administration, the parents do not have a deed from the personal representative of the estate confirming their title. And, the title vested in them remains subject to belated claims by an unknown spouse or child. RCW 11.04.250. But, this does not mean the parents could not be successors in interest to the right of redemption under RCW 6.23.010. It does not mean that the parents could not convey by deed whatever right of redemption they may have had.

---

[3] Title remains with the judgment debtor during the redemption period. Performance Constr., LLC v. Glenn, 195 Wn. App. 406, 416, 380 P.3d 618 (2016). What passes to the purchaser at a foreclosure sale is an inchoate interest which may or may not ripen into title. Id.

Madrona Lisa submitted declarations from Porter's father, Clyde, and his mother, Sally, attesting to the fact that Porter left no will, was never married, and had no children. Semenyuk did not challenge the validity of the declarations or provide any evidence contradicting them factually.[4] This was prima facie evidence that Porter's parents were his heirs under RCW 11.04.250 and were successors in interest to Porter's right of redemption. The quit claim deeds they executed in favor of Madrona Lisa were evidence that Madrona Lisa was a successor in interest to the parents. The fact that Madrona Lisa's interest was still subject to potential claims by unknown heirs under RCW 11.04.250 did not disqualify them as a successor in interest under RCW 6.23.010.

The trial court erred in denying Madrona Lisa's motion to direct the sheriff to issue a certificate of redemption for the property.

## II. Amount Required to Redeem

The parties disagree about the amount Madrona Lisa must pay to redeem the property. The trial court did not reach the issue.

A redemptioner is required to do no more than the statute requires to effect a redemption. State ex rel. Bryant v. Starwich, 131 Wash. 101, 108, 229 P. 12 (1924). To effect redemption, RCW 6.23.020 requires the redemptioner to pay (1) the amount of the purchaser's bid, plus interest at the rate provided in the judgment, (2) any assessments or taxes paid on the property by the purchaser

---

[4] In its response to Madrona Lisa's motion to direct the sheriff to issue a certificate of redemption, Semenyuk notes that "no information is provided or inquiry made to find out whether there are any other parties that may have an interest in the subject property."

after the purchase, plus interest, and (3) any sum paid by the purchaser on any prior lien or obligation secured by an interest in the property.

The parties disagree over the interest rate Madrona Lisa must pay on Semenyuk's bid. Madrona Lisa argues that the proper rate, derived from the judgment, is 3.25 percent. Semenyuk argues Madrona Lisa should have to pay either 8 percent under the successive redemption statute, RCW 6.23.040, or 9 percent for consumer debts under RCW 4.56.110. RCW 6.23.040 is applicable where a second redemptioner redeems the property from a redemptioner who first redeemed from the purchaser. RCW 6.23.040(1). RCW 4.56.110 applies only to consumer debt. Neither statute is applicable. RCW 6.23.020 is clear: the redemptioner must pay the interest rate provided in the judgment. Here the judgment on which the foreclosure was premised provided a rate of 3.25 percent. That is rate of interest Madrona Lisa must pay.

Semenyuk also argues that she is entitled to her attorney fees, other administration costs, and filing fees associated with the purchase of the property. She claims that these fees are an "assessment" under RCW 6.23.020(2) because they could be filed as liens against the property. Semenyuk does not contend that liens for such fees have been filed against the property. And, we are not persuaded that these fees could be the proper basis for a lien. In W.T. Watts, Inc. v. Sherrer, our Supreme Court held that a mechanic's lien for repairs on a foreclosed property contracted for by the purchaser during the redemption period was unenforceable against a redemptioner. 89 Wn.2d 245, 250-51, 571 P.2d 203 (1977). The court observed that the cost of such repairs is not included in the

10

statutory redemption price. Id. at 251. To allow the purchaser to subject the redemptioner's interest to a lien for such costs would "permit [the purchaser] to accomplish indirectly that which the statute will not allow him to do directly." Id. Similarly, here the statute does not include attorney fees as part of the redemption price. Semenyuk cannot indirectly recover these fees by subjecting Madrona Lisa's interest to a lien. To the extent Semenyuk's attorney fees can become a lien, it may apply only against Semenyuk's own inchoate interest, not Madrona Lisa's.

Last Semenyuk claims she is entitled to a quantum meruit claim or constructive trust. Presumably, this is for amounts she spent on the property since purchasing it at the foreclosure sale. But, our Supreme Court has previously held that improvements made to the property by the purchaser prior to redemption are not to be included in the redemption price. Starwich, 131 Wash. at 107-08. To allow a purchaser to do so would give them the power to make redemption "so burdensome as to amount to a denial of the right." Id. at 107. The Starwich court observed that a purchaser may have an equitable claim to recover their value. Id. at 108. But, such a claim would be outside of the redemption context. Id. Semenyuk cites no authority to the contrary.

We reverse the trial court's denial of Madrona Lisa's motion to compel the sheriff to issue a certificate of redemption. We remand to the trial court for issuance of the necessary orders. We hold that Madrona Lisa's original tender was correct. On remand the trial court shall determine to what extent, if any, that

11

Semenyuk has incurred other statutory costs during litigation, and adjust the amount Madrona Lisa must pay accordingly.

_Appelwick, J._

WE CONCUR:

_Andrus, A.C.J._